SCOTT *v.* ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY.

Opinion delivered May 28, 1906.

1. RAILROAD CROSSINGS—CONTRIBUTORY NEGLIGENCE.—While the general rule is that travelers upon the highways, before going upon railroad crossings, are bound to look and listen for the approach of trains, and that it is deemed negligence *per se* for them to fail to do so, yet if the circumstances in a particular case are such that an

ordinarily prudent person might not have expected a train to pass at that moment, it was a question for the jury to say whether the traveler was guilty of contributory negligence. (Page 139.)

2. CONTRIBUTORY NEGLIGENCE—WHEN A QUESTION FOR JURY.—Where a traveler, approaching the spur track of a railroad along a much frequented path, saw defendant's train standing on the spur track, and then crossed to the main track when he was struck by one of the cars which, without his knowledge, had been detached from the train on the spur track and "kicked" on down the main track, the question whether he was guilty of contributory negligence should have been submitted to the jury. (Page 141.)

Appeal from Crittenden Circuit Court; *Allen Hughes,* Judge; reversed.

*Frank Smith* and *J. W. & M. House,* for appellant.

It is only where the facts and circumstances are such that all reasonable men must from them draw the same conclusion that the court should determine the question of negligence as a matter of law. 159 U. S. 603. The question whether or not the deceased was guilty of contributory negligence was one for the jury to determine. 21 N. W. 212; 37 N. W. 149; 107 Pa. St. 8; 33 N. W. 161; 18 L. R. A. 60; 9 L. R. A. 521; 73 Me. 591; 21 N. Y. Supp. 159; 20 S. W. 490; 101 N. Y. 419, 426; 88 Am. Dec. 353; 14 Abb's Prac. N. S. 29; 40 N. Y. 11; 89 Hun, 596; 23 N. Y. Supp. 193; 140 N. Y. 639; 147 Mass. 495; 116 Mass. 540; 4 Am. St. Rep. 364; 26 S. W. 20; 68 Miss. 566; 39 N. J. L. 193; 8 Atl. 789; 23 N. W. 123; 55 N. W. 771; 24 N. W. 827; 22 N. W. 88; 105 Ind. 406; 34 Iowa, 158; 20 S. W. 163; 41 Cal. 421; 20 Ont. App. R. 244, and many other authorities.

*B. S. Johnson* and *J. E. Williams.* for appellee.

The path in use was not a public crossing, nor any part of a public highway. That it was frequently used by pedestrians did not change its character and convert it into a highway for foot-men. 46 Ark. 522. From the evidence, the time of day, and the physical facts, deceased was, as a matter of law, guilty of such contributory negligence as to bar recovery. 65 Ark. 235; 54 Ark. 431; 74 Ark. 372; 69 Ark. 135; *Ib.* 380; 4 Elliott, Railroads, § 1703; 38 S. W. 311; 54 Ia. 57; 63 S. W. 362; 56 Ark. 457; 62 Ark. 156; 61 Ark. 549; 62 Ark. 235; *Ib.* 245; 64 Ark. 368; 65 Ark. 429; 62 N. E. 455; 201 Pa. 124; 63 S. W. 594.

*Frank Smith* and *J. W. & M. House,* for appellant in reply.

There are exceptions to the rule requiring a person crossing a railroad track to look and listen which are as well established as the rule itself. The case presented by this record falls within the exceptions. Authorities cited in our original brief, as also cases cited by appellee, sustain this doctrine. 65 Ark. 235, 239; 88 S. W. 911 and *Ib.* 98, when considered together; 86 S. W. 282, 284. See also 4 Ark. Law Rep. 531; 5 do. 245.

McCULLOCH, J. This is an action brought by Lula L. Scott, as administratrix of the estate of her deceased husband, George W. Scott, to recover damages resulting from the death of said George W. Scott, caused by the alleged negligence of the defendant, St. Louis, Iron Mountain & Southern Railway Company. He was run over and killed by defendant's train at Earle, a station in Crittenden County on defendant's road, and negligence of the servants of the company is charged in "kicking" a caboose and several box cars down the main track without keeping a lookout and without giving warning of the approach of the cars. The defendant denied the charge of negligence, and alleged contributory negligence on the part of said decedent in failing to look and listen, for approaching cars before going upon the track.

The court directed a verdict in favor of the defendant, and plaintiff appealed. The sole question for our determination, therefore, is whether the testimony, giving it the strongest probative force, was sufficient to warrant a verdict in favor of the plaintiff.

It is not contended that the evidence did not establish negligence on the part of the train operatives in failing to keep a lookout. Witnesses testified that the caboose and box cars were "kicked" down the main track, and that no one was on or near the end of the train keeping lookout. But it is urged that, according to the undisputed evidence, deceased was guilty of negligence in going upon the track in front of the approaching cars without looking and listening.

The facts are substantially as follows: The village of Earle contains about 200 or 250 inhabitants, and lies mainly on the north side of the railroad track, though there is one business

house and several residences on the south side of the track. There is a switch track about 6 feet north of and parallel with the main track, and a spur track called the "Crittenden spur," curving off from the south side of the main track, which runs out to a sawmill. The spur connects with the main track 471 feet west of the point where deceased was run over, and it is 192 feet from the latter point (where deceased was run over) due south to the spur. The main track and sidetrack are upon a dump or embankment about 8 feet high, and across them runs a path which has been generally and frequently used by those residing in the vicinity in crossing the tracks. Deceased was traveling this path, going south, when he was run over and killed. There is a seed house on the dump, and the path crosses the track 3 or 4 feet east of it. When the injury occurred, there were several box cars standing on the switch track within 3 or 4 feet west of the path. The path, after crossing the switch track, diverged slightly towards the east, so that it was 21 feet from the center of the switch track, where the path crossed, to the center of the main track at the crossing.

The injury occurred in the day time. Deceased lived on his farm, a short distance south of the station, and on this occasion had visited the postoffice, which was north of the tracks, and was attempting to recross, going southward. The freight train had come in from the east, passed the station and switches and, backing toward the east, detached the caboose and two or three cars on the rear end of the train, and "kicked" them down the main track, and the balance of the train with the engine attached backed down the Crittenden spur. Deceased walked up the dump, traveling the path and upon the switch track, and about came to a stop in the middle of that track near the end of the line of the line of the stationary cars, and looked toward the right. He could not then, on account of those stationary cars, see down the main track, whence the caboose and cars were approaching, but could see the balance of the backing train on the Crittenden spur, which was then about due south of him about 60 yards distant. He passed over the switch track, following the path which diverged to the left, and was in the act of stepping upon the main track, when the moving caboose struck and instantly killed him. His head was found between the rails of the main track, and his

body between the two tracks. The witnesses say that just as the caboose struck him he looked to the right over his shoulder and threw up his hands. His back was almost squarely toward the approaching cars as he traveled the path between the tracks.

This occurred in broad daylight, and evidently deceased could have seen the approaching cars if he had looked. There was nothing to hinder. The only question is, therefore, whether we shall say that he should have looked, and that, as a matter of law, he was guilty of negligence when he failed to do so.

In the recent case of *Tiffin* v. *St. Louis, I. M. & S. Ry. Co.,* 78 Ark. 55, after announcing the general rule that travelers upon the highway, before going upon railroad crossings, are bound to look and listen for the approach of trains, and that it is deemed negligence *per se* for them to fail to do so, we stated certain exceptions where such omission can not be said to be negligence *per se,* but should·be left to the jury to determine whether or not the failure to look and listen was consistent with the exercise of ordinary care. The following, among other exceptions to the general rule, was stated: "Where the circumstances are so unusual that the injured party could not reasonably have expected the approach of the train at the time he went upon the track." Citing *French* v. *Taunton Branch Railroad,* 116 Mass. 537; *McGhee* v. *White,* 66 Fed. 502; *Bonnell* v. *D., L. & W. R. Co.,* 39 N. J. L. 189. We declined to apply this exception in that case because the state of the proof did not warrant it. The evidence established the fact that trains were constantly passing the crossing in each direction.

In *McGhee* v. *White, supra,* a decision by the United States Circuit Court of Appeals for the Sixth Circuit, the facts were that a traveler attempted, at a public crossing,·to cross the railroad track where a work train had passed about a minute and a half before, and was struck by another train going in the same direction, and it was held that the case was one for the jury to determine whether or not under those circumstances he was guilty of negligence, as he had reason to believe that another train was not following within so short a time or distance. Judge Taft, speaking for the court, said: "At least, this circumstance prevents us from holding, as a matter of law, that his failure to

look was contributory negligence.   It required the submission of the issue to the jury."

In *French* v. *Taunton Branch Railroad, supra,* the facts were that the plaintiff, without looking up or down the track, attempted to cross immediately after a train had passed, and was run over by cars following behind it which had been detached from the same train for the purpose of making a running switch, and it was held that the question of contributory negligence was properly submitted to the jury.   The court, in disposing of the question, said:   "Whether the plaintiff was in the exercise of that due care which persons of common prudence and intelligence would exercise when placed in a similar situation, and whether she was careless in failing to look up the track at the point near the crossing where it was visible, was a question for the jury to determine in the peculiar circumstances of the case."   *Ferguson* v. *Wisconsin Cent. Ry. Co.,* 63 Wis. 152; *Phillips* v. *Milwaukee & N. Rd. Co.,* 77 Wis. 349; *Duame* v. *Chicago & N. W. Ry. Co.,* 72 Wis. 523; *Palmer* v. *Detroit, etc., Rd. Co.,* 56 Mich. 1, 22 N. W. 88; *Chicago & E. I. Rd. Co.* v. *Hedges,* 105 Ind. 404; *Baker* v. *Railway Co.,* 122 Mo. 533, 26 S. W. 20; *Bowen* v. *N. Y. Central, etc., Rd. Co.,* 89 Hun, 596; *York* v. *Maine Cent. Rd. Co.,* 84 Me. 117; *Randall* v. *Railroad,* 132 Mass. 269; *Alabama & V. R. Co.* v. *Summers,* 68 Miss. 566.

In all these cases there existed circumstances which the court held to be so unusual that the traveler may reasonably have been deceived by appearances, and on account thereof failed to look and listen when he might have discovered the danger, and the court refused to declare such omission to be negligence *per se.*

In *Ferguson* v. *Wisconsin Cent. R. Co., supra,* the facts were that deceased, before attempting to cross the railroad track, waited for an engine to pass, but immediately went upon the track while he was enveloped with smoke and steam from the passing engine, and was struck by cars which had been detached for the purpose of making a "running switch."   He could have seen the approaching detached cars if he had waited for the smoke to clear away; and the court was asked to declare, as a matter of law, that he was guilty of negligence in failing to do so.   The court in passing upon this contention said:   "No court has applied and enforced the above rule more uniformly and con-

sistently than has this court in numerous cases adjudicated by it. Had the plaintiff gone upon the track in front of the engine and been injured, it would probably have been a case for the application of the rule; but no such case is presented in this record. The plaintiff waited for the engine to pass before he went upon the track, and, having done so, the question we are to determine is, should he have ascertained before going upon the track that a running switch was being made, and a detached car was moving rapidly down the track upon him? We find nothing in the testimony which shows that the plaintiff knew, or ought to have known, the existence of those conditions when he approached the track for the purpose of crossing it. The jury may well have found from the testimony that the noise of the car on the track was drowned by that made by the passing engine; that when he stepped upon the track he was so enveloped in smoke and steam from the engine that he could not see the approaching car; and that he did not know or have reason to suspect that a running switch was being made. Under these circumstances it would manifestly be unjust to apply to the plaintiff the rule above stated in all its rigor."

The same learned court in a later case (*Duame* v. *Railway Co., supra*) in discussing the same question said: "As a general rule, and unaffected by other circumstances, the proposition urged in the brief of the learned counsel of respondent that one approaching a railroad crossing who may, by looking, have a timely view of an approaching train, is bound to look and listen for its approach before attempting to cross the track, and that a failure to do so is negligence, may be correct, and the circuit court most probably applied this strict rule to the plaintiff's case. We do not think that such a rule would be applicable to the case. There is a most important fact in this case that materially modifies this strict rule, and makes it inapplicable, and that is that this train had just passed this crossing, while the deceased was within a few rods of it and driving upon a trot, and had passed on out of his sight, and he had reason to suppose that it would continue on, it being upon the main track, like any other train upon its regular route, and had no reason to suppose that it would immediately return. The presumption was that it would go on and not return. He was thus thrown off his guard."

In *York* v. *Maine Central R. Co., supra,* the Supreme Court of Maine, where the facts were that plaintiff's intestate was struck by cars which had been detached from the engine in making a flying switch, said: "It is true that a traveler upon a highway before crossing a railroad should look and listen for approaching trains. It is usually clear, indisputable negligence in the traveler not to do so, as has been repeatedly held by this court. If nothing indicates to the contrary, trains of some kind, or at least locomotives, are liable to pass at any moment, and the traveler should be continually on his guard against them. But sometimes there may be indications that nothing will pass along the railroad for some minutes at least. * * * In view of the well known and necessary rule requiring considerable space and time between successive trains, the passage of one train may be an indication that no other will pass the same way for some minutes. These and other acts upon the part of the railroad may throw the usually prudent traveler off his guard, and free him from the reproach of negligence in attempting to cross at such a time."

The only distinction between the case at bar and most of the cases cited is that in those cases the succeeding trains of cars passed on the same track whilst in the case at bar they passed upon different tracks.

In the case of *Phillips* v. *M. & N. R. Co.,* 77 Wis. 349, the detached cars were by a running switch sent down a different track from that on which the traveler had just seen them pass, and the court held that the question of contributory negligence was, under the circumstances, one for the jury. The court said: "He (deceased) was thus deceived and thrown off his guard, and had no reason to expect that any of those cars would interfere with his crossing the sidetrack on the sidewalk, or that they would so soon be sent down that track without any one to look after them. The jury might well have excused the deceased from looking for any of these cars on the south track going east at that time, and have found that he was not guilty of any contributory negligence under these peculiar circumstances."

We see no distinction, however, in the fact that the cars follow upon the same track or upon a parallel track. The question is, were the circumstances so unusual that different conclusions

may reasonably have been drawn by men of ordinary prudence as to anticipating the approach of a train at the time the traveler attempted to cross without looking in that direction.  If there is nothing in the circumstances to deceive the traveler and throw him off his guard, and he goes upon the track without looking and listening, then he is guilty of an act of negligence, and the court should declare it as a matter of law; but if the circumstances were such that an ordinarily prudent person might not expect a train to pass at that moment, it is then a question to be submitted to the jury to say whether or not he has been guilty of negligence.

Now, applying that rule to the facts of this case as presented by the testimony in the most favorable light to appellant's cause of action, let us see what conclusion the jury might have reached.

Deceased approached the track in broad daylight, and, before he went behind the cars standing on the switch track, could see for considerable distance up and down the track.  There was but one train at or near the station, and he saw that train on the main track backing toward the south.  When he walked up the dump and passed behind the cars on the switch track, he hesitated, or stopped, and looked to the right as far as he could, and saw what he doubtless thought was the same train of cars with the engine attached backing down the Crittenden spur.  He did not know that some of the cars had been detached and "kicked" on down the main track.  He was deceived by this circumstance, and with feeling of security walked on down the path to the edge of the main track, where he was struck and killed.  Would a reasonably prudent person have so acted under the circumstances?  That question should have been submitted to the jury with appropriate instructions, and the court erred in refusing to do so.

Reversed and remanded for a new trial.

HILL, C. J., and BATTLE, J., dissent.

HILL, C. J., (dissenting.)  I think the court goes too far in holding that there was a question for a jury in this case.  The rule applicable to this case was stated in *St. Louis, I. M. & So. Ry. Co.* v. *Luther Hitt,* 76 Ark. 224, as follows: "But, as explained in the Martin case, the failure to look and listen is not always negligence.  There may be circumstances as there instanced,

79—10

or where there is an invitation by the railroad, express or implied, which might relieve a prudent person from this duty. But all those matters are exculpatory, and the duty to continue to look and listen should be definitely put upon the plaintiff; and if there is sufficient evidence of exculpatory circumstances, then the whole question should go to the jury, and no part of it be determined by the court."

Charged with the duty of looking and listening when approaching the main track of the railroad, Mr. Scott discharged it by stopping on a sidetrack where his view in one direction was obstructed by cars upon the sidetrack; and, seeing about 200 feet away on a spur track the engine and part of the train which had shortly before arrived at the station, he went ahead across the main track without ever looking to his right, where part of the train was approaching without engine, lookout or signal. The negligence of the company in allowing a detached part of a train to travel without lookout, signals or warning along a much traveled public way was shocking; but the negligence of Mr. Scott in assuming with a hasty glance that all the train was on the spur track and blindly going on to the main track without looking to see what was plain to be seen, was likewise negligence; and I fail to see any exculpatory circumstances justifying submission to the jury.

Mr. Justice BATTLE concurs herein.