[L. A. No. 7642. In Bank.—July 2, 1927.]

## ANNA R. CHAPPELL, Respondent, v. SAN DIEGO AND ARIZONA RAILWAY COMPANY (a Corporation), Appellant.

[1] NEGLIGENCE—LAST CLEAR CHANCE DOCTRINE—APPLICABILITY OF.— The doctrine of the last clear chance, in an action for damages for negligence, presupposes that the plaintiff has been negligent; that as a result thereof he is in a situation of danger from which he cannot escape by the exercise of ordinary care; that the defendant is aware of plaintiff's dangerous situation under such circumstances that he realizes, or ought to realize, the latter's inability to escape therefrom; and that he then has a clear chance to avoid injuring plaintiff by the exercise of ordinary care, and fails to do so.

[2] ID. — OPPORTUNITY TO AVOID COLLISION — POWER TO STOP CAR — QUESTION FOR JURY.—In this action for damages for personal injuries received in a collision between an automobile and a gas motor railway car at the crossing of a city street and the railroad track, it is held that the jury had the right to believe from the testimony of the motorman and conductor that the railway car could have been stopped before it reached the crossing, and the verdict for the plaintiff must be taken as a finding that the defendant's car failed to stop as soon as possible in the exercise of due care and that the last act of negligence of the defendant was the proximate cause of the injury.

[3] ID.—ARGUMENT TO JURY—MISCONDUCT—LACK OF DAMAGE.—It is held in this action that certain remarks made by counsel for the plaintiff in the closing address to the jury, commenting on the stop, look and listen rule, were highly improper and standing alone might call for a declaration of prejudicial misconduct if it were not for the fact that the trial judge's reprimand and strictures on the argument fully offset any possible damage which the remarks otherwise might have had.

1. See 19 **Cal. Jur.** 651–659; 20 **R. C. L.** 138, 144.

2. Application of last clear chance doctrine to collision between automobile and street-car, note, **Ann. Cas.** 1916E, 515. Automobile's right to recover for injuries due to collision with street-car at street intersection as affected by principle of last clear chance, notes, 28 **A. L. R.** 283; 46 **A. L. R.** 1047.

3. Mode of curing error in argument, note, 9 **Am. St. Rep.** 569. See, also, 2 **R. C. L.** 436.

[4] ID.—MOTION FOR NEW TRIAL—ALLEGED MISCONDUCT OF PLAINTIFF —CONFLICTING EVIDENCE—APPEAL.—In an action for damages for personal injuries, where a motion for a new trial was made upon affidavits charging that the plaintiff sought to influence certain women jurors during the course of the trial and when the court was in recess, by voluntarily addressing said jurors and representing to them her serious physical condition, which statements were denied in counter-affidavits, the action of the trial court denying the motion will not be disturbed on appeal in the absence of a showing of an abuse of discretion.

[5] ID. — EVIDENCE — SPEED OF CARS — OTHER OCCASIONS.—In such a case, although it was error to admit evidence on behalf of the plaintiff concerning the speed at which the gas motor-cars of the defendant had been observed to be operated around a curve on occasions other than upon the day and at the time of the accident, it is held that in the light of other evidence concerning the speed of the car at the time in question, it cannot be said that but for said improperly admitted evidence the verdict would have been for the defendant.

[6] ID.—VERDICT—SUFFICIENCY OF EVIDENCE.—In such a case, where, if the extent of the plaintiff's injuries were to be determined by the testimony of the medical experts and other witnesses produced on behalf of plaintiff, entirely independent of her own testimony on the subject, it could not be concluded that the amount of the verdict was disproportionate to the injuries received, the verdict will not be held on appeal to be excessive, notwithstanding the evidence shows that plaintiff exaggerated her injuries and physical condition and swore falsely with reference thereto, as it is probable that the jury took into consideration those facts in fixing the amount of the verdict.

(1) 29 Cyc., p. 530, n. 15, p. 531, n. 19.   (2) 33 Cyc., p. 1129, n. 68.   (3) 4 C. J., p. 958, n. 80.   (4) 4 C. J., p. 837, n. 86.   (5) 4 C. J., p. 969, n. 56.   (6) 4 C. J., p. 872, n. 19; 17 C. J., p. 1091, n. 85.

APPEAL from a judgment of the Superior Court of San Diego County.  C. N. Andrews, Judge.  Affirmed.

The facts are stated in the opinion of the court.

Read G. Dilworth and V. F. Bennett for Appellant.

4.  Attentions to and conversations with jury requiring granting of new trials, note, 16 Am. Rep. 454.  See, also, 2 Cal. Jur. 905; 20 R. C. L. 234, 256.

5.  See 2 Cal. Jur. 1020.

Crouch & Sanders for Respondent.

SHENK, J.—This is an appeal from a judgment on a verdict in favor of the plaintiff in an action for damages for personal injuries. The collision involved occurred on May 12, 1921, at a point in the outskirts of the city of San Diego where Francis Street, a north and south street, crosses the tracks of the defendant railway company at right angles. The defendant company operates a line of railroad from San Diego to Lakeside, about seventeen miles in length. On this line steam trains are operated for the carriage of passengers and freight. The company also operates thereon a heavy type of passenger and freight car the motive power of which is distillate. Before the Francis Street crossing is reached on the course outwardly from San Diego the cars of the railroad company proceed over a reverse or horseshoe curve. The view to the west of Francis Street is in part obstructed by a hill and at the time of the accident was further partially obstructed by a growth of brush bordering the right of way. The grade of the curve is slightly upward as the tracks approach and cross Francis Street. Just before the accident one of the gas motor-cars of the defendant was nearing the Francis Street crossing from the west. It was proceeding through the cut in the hill, which cut is from five to nine feet in depth. The hill slopes downwardly to the level of the tracks at a point about one hundred feet westerly from the crossing.

The plaintiff resides in the vicinity of said crossing. She has a son who was living at home at the time. He was employed in San Diego, usually not returning to his home for his noonday meal. On the day of the accident the plaintiff requested her son to return home at midday and as driver convey her to San Diego in a Ford automobile owned by the plaintiff. As the two proceeded along Francis Street the automobile slowed down at a point about eight or ten feet from the tracks. It then proceeded slowly to the center of the railway track, where its motor stalled and the automobile stopped. The gas motor-car of the defendant struck the automobile and "dragged" it for some distance away from the crossing. Just before the impact the plaintiff's son jumped from the automobile but the plaintiff re-

mained therein, receiving as the result of the collision the injuries alleged in the complaint. The plaintiff charged the defendant with negligence, which the defendant denied. In a special defense the defendant charged the plaintiff with contributory negligence.

[1] The court instructed the jury on the doctrine of the last clear chance and from a survey of the record the jury must have applied that doctrine to the facts presented. Numerous specifications of error are advanced by the defendant. The first one to be discussed is that the facts presented to the jury were not such as to justify the instruction on last clear chance and that the giving of that instruction was prejudicial error. Without reviewing the evidence in detail it may be said from an examination of the record that there was sufficient evidence upon which the jury could find negligence on the part of the defendant. One witness testified that as the gas motor-car of the defendant was immediately approaching the crossing it was going thirty miles per hour. Another witness testified that it was going forty-five miles per hour. Another witness testified that as the said car was approaching the crossing there was no signal or alarm given by the operator of the car. The civil engineer of the defendant testified that if the motorman was running his car faster than twenty-five miles per hour at the time in question he was going faster than the track at that point was built for. It was in evidence that the crossing was a very dangerous grade crossing especially by reason of the cut and the curve. There was also sufficient evidence upon which the jury could find contributory negligence on the part of the plaintiff. She was familiar with the dangerous character of the crossing and was in practical control of the car at the time of the accident. The approaching gas motor-car was observable for a distance of approximately two hundred feet as it approached the crossing and the son testified that but for unwarranted physical interference on the part of the plaintiff in driving the car at the crucial moment he would have gotten the car across the track in time to have avoided the collision. With the automobile stalled on the track the plaintiff was in a position of danger from which, it is reasonable to conclude, she could not, with the exercise of ordinary care, extricate herself. The doctrine of the last

clear chance presupposes "that the plaintiff has been negligent; that as a result thereof she is in a situation of danger from which she cannot escape by the exercise of ordinary care; that the defendant is aware of her dangerous situation under such circumstances that he realizes, or ought to realize, her inability to escape therefrom; that he then has a clear chance to avoid injuring her by the exercise of ordinary care, and fails to do so. If all of these elements are present the rule applies and enables the plaintiff to recover notwithstanding her own negligence. But if any of them be absent the rule does not apply and the case is governed by the ordinary rules of negligence and contributory negligence" (*Palmer* v. *Tschudy,* 191 Cal. 696, 700 [218 Pac. 36]). The doctrine is applicable when the defendant actually perceives the perilous position of the plaintiff in time to avoid the accident by the exercise of ordinary care (*New York L. Oil Co.* v. *United Railroads,* 191 Cal. 96, 101 [215 Pac. 72]; 19 Cal. Jur. 651). [2] The motorman testified that he was proceeding around the curve toward the crossing at about twenty-five miles an hour; that when he got within fifty-five or sixty feet of the crossing he saw the plaintiff's automobile moving slowly six or eight feet from the track and it looked as though it was trying to stop; that he immediately applied the emergency brake and, "did everything he could to stop." There was evidence that the automobile was "dragged" seventy feet east of the crossing where it stopped in a position parallel with that of the gas motor-car and that the latter car, which was seventy-two feet long, then proceeded about half its length beyond the automobile with its front end approximately 106 feet from the center of the crossing. The motorman testified that as he approached the crossing he first saw the automobile from a point fifty or sixty feet from the crossing at which time he was going about twenty miles per hour. The conductor testified that at the time of the impact his car was going about twelve miles per hour and that a car of that size going at the rate of twenty-five miles per hour would, with the emergency brakes applied, stop in seventy feet. The jury had the right to believe from the testimony of the motorman and the conductor that the car could have been stopped before it reached the crossing. Under the evidence it could also have concluded that the car actually stopped

with its front end about 166 feet easterly from the point
where the motorman first observed the plaintiff in her peril-
ous position. The conclusion of the motorman that he did
everything he could to stop was not, under the evidence,
binding on the jury. Independently of the speed of the car
the jury could find negligence on the part of the defendant
by reason of a lack of sufficient warning signal. True, there
was abundant evidence upon which a contrary conclusion
could have been based on the issue of defendant's negligence
but from what has been said as to the evidence favoring the
plaintiff it is seen that from the proximity of one eviden-
tiary fact to another it was the province of the jury to de-
termine their relation. The verdict must be taken as a find-
ing that the defendant's car failed to stop as soon as it was
possible for it to have done so in the exercise of due care
and that the last act of negligence of the defendant was the
proximate cause of the injury. This it was the province
of the jury to find under the instructions of the court
relating to the doctrine of the last clear chance. There was
no error in giving the instruction complained of on that
subject.

[3] We have examined and considered the other points
elaborately briefed by the defendant and orally argued.
Certain remarks made by counsel for the plaintiff in the
closing address to the jury commenting on the stop, look,
and listen rule were highly improper and standing alone
might call for a declaration of prejudicial misconduct if it
were not for the fact that the trial judge's reprimand and
strictures on the argument, in our opinion, fully offset any
possible damage which the remarks otherwise might have
had.

[4] Prejudicial misconduct is charged against the plain-
tiff herself. It was averred in affidavits filed on the motion
for a new trial that the plaintiff sought to influence certain
women jurors during the course of the trial and when the
court was in recess by voluntarily addressing said jurors
and representing to them her serious physical condition.
These statements were denied by the plaintiff in counter-
affidavits filed on the hearing of the motion. The conflict
in the evidence thus presented was resolved in plaintiff's
favor in the denial of the motion and we are not at liberty

on appeal, in the absence of an abuse of discretion, and none appears, to disturb the court's conclusion thereon.

[5] Certain rulings of the court are challenged. Over the objection of defendant's counsel a witness on behalf of the plaintiff was permitted to testify concerning the speeds at which gas motor-cars of the defendant had been observed by him to be operated around said curve on occasions other than upon the day and at the time of the accident. Clearly it was error to permit this testimony to go to the jury (*Starr* v. *Los Angeles Ry. Corp.*, 187 Cal. 270, 281 [201 Pac. 599]), but in the light of other evidence concerning the speed of the car at the time in question it cannot be said that but for said improperly admitted evidence the verdict would have been for the defendant. Objections to other rulings of the court have been examined. Many of them are without merit and none of them is deemed of sufficient importance to warrant a reversal of the judgment. Nor do we find any valid objections to the charge to the jury.

[6] Finally, it is contended by the defendant that the verdict was excessive. The plaintiff sued to recover $274 for expenses incurred for medical attention, medicines, and nurse hire, and $40,000 for personal injuries. The verdict was in a lump sum of $3,000. The claim of excessive damages is based largely on the admittedly false swearing of the plaintiff as to matters bearing on her physical condition. It is beyond question that she received substantial injuries. She testified that she was confined to her bed for a period of twenty-seven days; that when she was able to get up from her bed she had to have help to get around; that she was hurt from head to foot; that she was a mass of black and blue bruises; that she was unable to do her housework for a long period of time and that at the time of the trial she was not able to do all of it; that she had not recovered and is in continual pain; that her chest and her arm are numb and that she could not raise her hand with which to comb her hair; that she could not carry her foot in walking; that she gets numb and is continually falling; that she had no appetite and does not care to eat and has indigestion; that her outlook on life has changed and she does not want to go any place; that she is very easily excited and is tired all of the time; that there are permanent marks on her body; that there is a large lump on her back; that there is a frac-

ture of the breastbone with a lump thereon about the size of an egg; that there is a lump on her ear; that there is a large place on her shoulder and that she has severe trouble with her eyes.

On cross-examination she admitted that she had gone for an automobile ride on the day after the accident. She denied that she had gone, about ten months after the accident, to Tiajuana to attend the races; she denied that she had taken automobile trips during the time that she claimed to have been disabled; she denied that she requested a friend on one of said trips to introduce her as Mrs. Caudell, so that her identity might not be known; she denied that she had gone to numerous cafes, saloons, and cabarets on a trip to Tiajuana, drinking and dancing therein; she denied that she had endeavored to influence certain witnesses who might be called to testify; she denied that she had told her friends that she was going to lengthen her dress and wear the same with an old coat and shoes at the trial because she had been told that the jurors on a former mistrial of the cause had said that she looked too "young and cattish" to be injured to the extent she claimed, and that she could afford to wear these old clothes for a few days because of the large verdict she expected to get. She made the foregoing and similar denials on her cross-examination. Subsequently she returned to the witness-stand and admitted that said denials were not true. This she did, so she testified, on the advice of her counsel to tell the truth as to all such matters. The record discloses a deliberate purpose on the part of the plaintiff to exaggerate her injuries and to play upon the sympathies of the jurors. Her counsel, in his closing argument to the jury, said: "I don't want you to believe my client, because I don't believe her, she has lied to me and she has lied to you."

The medical testimony on behalf of the plaintiff did not show any causal connection between the lumps on her breastbone and her ear and the injuries actually received, but there was reliable evidence that she was suffering from a "clear-cut, definite traumatic neurosis." This testimony need not be elaborated upon. It may be said, however, that if the extent of the plaintiff's injuries were to be determined by the testimony of the medical experts and other witnesses produced on behalf of the plaintiff, and entirely independent

of her own testimony on the subject, it could not be concluded that the amount of the verdict was disproportionate to the injuries received. Since the plaintiff's exaggerations as to her injuries and physical condition and her false swearing with reference thereto were before the jury on her own admissions at the trial it is quite probable that the jury took into consideration those factors in fixing the amount of the verdict. On the record we cannot say that the award of damages in this case was so grossly disproportionate to any compensation reasonably warranted as to be a shock to the sense of justice and raise a presumption that the verdict was the result of passion, prejudice, or corruption rather than of an honest and sober judgment. Unless this may be said the court on appeal would not be warranted in setting aside the verdict as excessive (*Kelley* v. *Hodge Transp. System*, 197 Cal. 598, 610 [242 Pac. 76]).

The judgment is affirmed.

Waste, C. J., Curtis, J., Langdon, J., Preston, J., and Seawell, J., concurred.