[Civ. No. 80.  Fourth Appellate District.—February 2, 1931.]

THELMA LINDSEY, a Minor, etc., et al., Respondents, v. PACIFIC ELECTRIC RAILWAY COMPANY et al., Appellants.

484

Frank Karr, E. E. Morris and C. W. Cornell for Appellants.

McNabb & McCloskey and Kenneth C. Wiseman for Respondents.

MARKS, J.—This is an appeal from a judgment entered in favor of respondents for damages resulting from the death of Peady Gilbert Lindsey. The case was tried before a jury.

Respondents are the widow and minor children of Peady Gilbert Lindsey, deceased, who was killed at about 8:20 o'clock on the morning of March 20, 1928, in a collision between a truck which he was driving north on Hellman Avenue, and a west-bound work train of the Pacific Electric Railway Company operated by A. V. Ringo as motor-

man. The accident occurred at the crossing of the railway company's single track road over Hellman Avenue, a public road in San Bernardino County. Hellman Avenue runs north and south and is crossed at an acute angle by the railroad track which runs from northeast to southwest on the company's right of way which is privately owned. The roadway on Hellman Avenue approaches the railway crossing on an ascending grade of about two per cent from the north, and about three and one-half per cent for about two hundred feet from the south. At the time of the accident there was an earth bank about four feet high on the east side of Hellman Avenue south of the crossing and on the right of way extending northeasterly along the southerly side of the tracks. On this bank, oats and weeds had grown to a height of about two feet. There was an orange orchard on private property to the southeast of Hellman Avenue and the right of way so that the view of the tracks to the northeast, of a traveler approaching the intersection from the south, was thoroughly obscured until he had reached a point about ten feet south of the southerly rail. In approaching the crossing from the south in a truck similar to the one driven by the deceased, the front wheels would have to be very close to the track before the driver could see four or five hundred feet of the tracks to his right. The usual cross-arm warning signal was maintained by the railway company north of the track on Hellman Avenue. It also maintained an electrically operated wigwag on the west side of Hellman Avenue south of the crossing. This wigwag was out of order on the morning of the accident and operated continuously without regard to whether or not trains were approaching. This condition had existed for three or more days prior to the accident. The railway company operated about twelve passenger trains and three freight trains traveling on regular schedule over the crossing each way every day. Deceased had passed the crossing every day, Sundays excepted, for several months and was familiar with the conditions existing there, including the defective operation of the wigwag.

On the morning of the accident two witnesses traveling south on Hellman Avenue saw the wigwag working and stopped their automobile about fifty feet north of the crossing. They saw deceased approaching the crossing from

a point about one hundred and sixty feet south of it. He was driving his truck at a speed of not more than fifteen miles per hour which was gradually decreased until the time of the impact. Whether or not it was moving at this time does not definitely appear. However, both witnesses were positive that he did not stop before the front of his truck was on the.track or so near thereto that it was struck by the electric boxcar of the railway company. We conclude from the undisputed evidence of these witnesses that while deceased may have listened for an approaching train, he could not look until he was in a position of danger on account of his obstructed view, and he did not stop his truck until it, or a portion of it, was in front of the approaching train. It should be noted that these witnesses heard the noise of the freight train as it approached the Hellman Avenue crossing.

Under the facts which we have stated, appellants maintain with every show of confidence that the judgment cannot be sustained because the evidence shows that the deceased was guilty of contributory negligence as a matter of law which will defeat a recovery on the part of respondents. They rely upon the familiar rule in California that in a case where the view of the driver of an automobile was so obstructed that he could not see a train approaching on a track intersecting his path until his automobile was in grave danger, ordinary care and prudence required him to stop, alight and walk ahead to a point where he could see down the tracks before he proceeded on to the crossing. Respondents seek to escape the rigors of this rule in the instant case by applying an exception to it which finds authority in other jurisdictions and which has been considered in the case of *Pietrofitta* v. *Southern Pac. Co.*, 107 Cal. App. 575 [290 Pac. 597, 599]. They rely upon this rule which we may summarize as follows: That where the driver of a vehicle on a public highway sees a train, running on a regular schedule over a single track road, pass in front of him, and then proceeds upon his way and is struck by a second train not running on a regular schedule which is following the first train very closely in point of both time and distance, an unusual circumstance is presented which removes the case from the general rule and makes the ques-

tion of contributory negligence one of fact to be determined by the jury.

In the instant case it appears that the deceased came into collision with a work train of the railway company which was not running upon any schedule. It was preceded at a distance of from eleven to thirteen hundred feet by a passenger train running on regular schedule. Witnesses for respondents fixed the time elapsing between the passing of the two trains, at, from one, to one and a half minutes. The passenger train was traveling at a speed of from fifty to fifty-five miles per hour and the work train at a speed of about forty miles per hour. Taking the distance separating the two trains as given by the witnesses for respondents, and the number of feet the work train would travel in one second at forty miles per hour as furnished by the counsel for appellants, and allowing for the reduced speed of the work train just before the accident, the time elapsing between the two trains passing the same point would be about thirty seconds.

■ There is no direct evidence in the record that the deceased saw the passenger train cross the intersection. However, the crossing was clearly visible for at least one-half a mile south on Hellman Avenue. The deceased must be charged with seeing that which was plainly within his vision.

■ The railway tracks crossing Hellman Avenue were part of an interurban electric railroad connecting the cities of Los Angeles and San Bernardino. The right of way was owned by the railway company which maintained depots for the convenience of its freight and passenger service. It maintained a regular schedule of arrival and departure of freight and passenger trains. The accident we are considering occurred outside of the limits of an incorporated city in rural territory. Under these circumstances the duties and rights of the appellant railway company in operating its trains are similar to those of a company operating steam-propelled trains under similar circumstances. (22 Cal. Jur. 237.)

■ There is evidence in the record which would support the finding that no warning was given of the approach of the work train. In the case of *Thompson* v. *Los Angeles etc. R. Co.,* 165 Cal. 748 [134 Pac. 709, 711], the court said:

"But we think it must be held that there was enough in the evidence to justify the jury in finding that the motorman was negligent in not giving proper warning, by bell or whistle, of his approach. It is true that the only evidence that he did not give such warning was negative, consisting of the statements of the people in the automobile that they heard no signal. But, if they were so situated, as they undoubtedly were, as to have been able to hear a bell or whistle sounded from the motor car, their failure to hear is some evidence that no such signal was given. (1 Wigmore on Evidence, sec. 664; *Stotler* v. *Chicago & A. R. Co.,* 200 Mo. 107 [98 S. W. 509]; *Cotton* v. *Willmar etc. R. Co.,* 99 Minn. 366 [116 Am. St. Rep. 422, 9 Ann. Cas. 935, 8 L. R. A. (N. S.) 643, 109 N. W. 835].) That there was positive testimony to the contrary does not conclusively establish that a warning was given. It creates merely a conflict of testimony, which is finally resolved, so far as this court is concerned, by the verdict of the jury. This circumstance alone supports the finding of negligence." (*Badostain* v. *Pacific Elec. R. Co.,* 83 Cal. App. 290 [256 Pac. 576].)

We are of the opinion that the fact that the wigwag and crossing bell were out of order so that they were in continuous operation regardless of whether or not a train was approaching, is of little importance in this case. The deceased must have known of the defective condition of these warning signals as he had passed over the crossing several times during the period they were out of order. He must have known that their operation did not convey a true notice of the approach of a train or that the track was clear. He knew that they could not be relied upon and that he should use the same care to determine the approach of a train before attempting to cross the track that would have been required of him had there been no such warning device maintained at the crossing.

It is well settled law in California that when the driver of a vehicle approaches a railway crossing not protected by a flagman, gates or signal devices, where his view of approaching trains is obscured and he cannot otherwise determine whether he can safely proceed, due care requires him to "stop and get out of his automobile, and go forward on foot to ascertain if a train is approaching". (*Koster*

v. *Southern Pac. Co.*, 207 Cal. 753 [279 Pac. 788, 794].)
It has been repeatedly held that under these circumstances
the standard of ordinary care required of a motorist is so
well and clearly established that his failure to observe and
follow this standard constitutes contributory negligence
as a matter of law and leaves no issue to be submitted to the
jury. It was said in the case of *Chrissinger* v. *Southern
Pac. Co.*, 169 Cal. 619 [149 Pac. 175, 177], where "the
standard of conduct is so obvious as to be applicable to all
persons, and the plaintiff has failed to measure up to that
standard, under the circumstances shown he is not entitled
to have the case go to the jury".

It remains for us to determine whether or not the instant
case presents any new or added circumstances not appearing
in those cases upon which the established rule is founded,
which will release the rigor of the general rule by present-
ing facts not contemplated by it and thereby make the ques-
tion of contributory negligence a question of fact for the
jury instead of one of law for the court. The only fact
suggesting itself which might accomplish this result is that
of the work train, not on regular schedule, following on a
single track road a passenger train on regular schedule at
an interval of time not less than thirty nor more than ninety
seconds. Would the fact that the regular passenger train
had passed over the crossing in front of deceased and pro-
ceeded upon its way, lull him into a sense of security and
give him a sufficient promise of safety and assurance that
another train would not follow in such a short space of time,
that it would change the *quantum* of care required of him?

The case of *Pietrofitta* v. *Southern Pac. Co., supra,* is the
only case in California of which we have knowledge, where
this question was considered. In this case the court said:
"In determining the degree of care which would be ex-
pected from a reasonably cautious person in crossing the
railroad track under the circumstances of this case the jury
might consider the fact that a freight train had just passed
and that one would not ordinarily expect another train so
soon." A petition for hearing of this case by the Supreme
Court after judgment in the District Court of Appeal was
denied.

The only case directly in point to which we have been
cited is *McGhee* v. *White,* 66 Fed. 502, 504 [13 C. C. A.

608], decided by Mr. Justice Taft. The facts of this case are so exactly similar to those of the instant case that it would seem a waste of space to set them out here. The court said: ''The work train had passed over the crossing not more than one and a half minutes before Kennedy was struck, and he had good reason to believe, therefore, that another train was not following within so short a time and distance. The shortness of the time between the two trains . . . would indicate a distance of not more than a sixth or a seventh of a mile between the two trains, running at twenty miles an hour. This is very much less than the usual distance between trains running in the same direction, and is most dangerous. Kennedy might, therefore, reasonably presume that, in the 40 yards he had to go to reach the track, another train would not pass the crossing. At least, this circumstance prevents us from holding as a matter of law that his failure to look was contributory negligence.''

There are many cases decided in other states which recognize the rule of contributory negligence in not stopping, looking and listening at railroad crossings where the view is obstructed, in which the reasoning used lends support to the exception to the rule recognized in the McGhee case.

In the case of *Bonnell* v. *Delaware, L. & W. R. Co.*, 39 N. J. L. 189, the driver of a vehicle upon a highway, on approaching a crossing, saw to his right the rear of a train headed away from him. Without doing anything further for his own safety he proceeded upon his way and was injured at the crossing by the train backing into him. In deciding the case the court said: ''But the plaintiff had looked when about a hundred yards from the crossing, and saw, as he supposed, a train going in the opposite direction, with the rear towards him. He was not required by any legal rule to look continually until he crossed the track. A man of prudence might have received a fixed impression, from the appearance of the train, that it was going away from the station. . . . He saw Francher's wagon crossing just before him, and the circumstance was likely to confirm his belief that there was no train near. It was for the jury to weigh all these facts and say whether his mistake and consequent feeling of security were unreasonable and manifested a want of proper care. . . . There were inferences to be drawn from all the facts of the case, upon the question of contributory negligence which were proper for the jury.''

In the case of *Duame* v. *Chicago & N. W. R. Co.*, 72 Wis. 523 [7 Am. St. Rep. 879, 40 N. W. 394], the court used the following language: "The train, which consisted of the locomotive, two box cars, and a caboose, had come out on the main track from one of the side tracks, and run north across the street; and, when it had passed about two or three car-lengths north of the street, it stopped, and immediately backed down towards the street. . . . There was no flagman at this crossing, and no one at the rear end of the train, to give warning to those about to cross the tracks at that place, and whether the bell was rung was a fact in dispute; witnesses for the defendant testifying that it was, and other witnesses testifying that they did not hear it. The deceased, in a one-horse vehicle, was driving west on Main street, towards his home, about seven miles in the country; and had approached within seven or eight rods of the crossing from the east, when the train passed over it, and went on north out of his sight, and he continued on a trot towards the crossing, and, as his horse stepped on the track, the rear car of the train was very near it, and whether he attempted to back or turn around or pass over the evidence is uncertain, but his carriage came in contact with the rear car, and he was thrown under its wheels, and killed. . . . The evidence tending to prove the negligence of the employees of the defendant is very strong, if not conclusive; and we infer, therefore, that the court directed the verdict on the ground of the contributory negligence of the deceased. . . . As a general rule, and unaffected by other circumstances, the proposition urged in the brief of the learned counsel of the respondent, that one approaching a railroad crossing who may, by looking, have a timely view of an approaching train, is bound to look and listen for its approach, before attempting to cross the track, and that a failure to do so is negligence, may be correct, and the circuit court most probably applied this strict rule to the plaintiff's case. We do not think that such a rule would be applicable in this case. There is a most important fact in this case, that materially modifies this strict rule, and makes it inapplicable, and that is that this train had just passed this crossing while the deceased was within a few rods of it and driving upon a trot, and had passed on out of his sight, and he had reason to suppose that it would continue on, it being

upon a main track, like any other train upon its regular
route, and had no reason to suppose that it would immedi-
ately return. The presumption was that it would go on,
and not return. He was thus thrown off his guard. . . .
He was entrapped by this unexpected return of the train,
for its sudden return over the crossing without warning was
to him a trap.''

The case of *Palmer* v. *Detroit etc. Co.,* 56 Mich. 1 [22
N. W. 88], also recognizes the exception to the general rule.
The railroad track ran north and south crossed by a street
at right angles. Plaintiff was proceeding west on the street
and saw an engine and tender going north over the crossing.
When it had passed he proceeded on to the crossing watch-
ing for trains from the south but not from the north. He
was injured by the engine and tender backing on to the
crossing from the north which he did not see until too late
to avoid injury. It was held that under the circumstances
contributory negligence was a question of fact for the jury.

In the case of *Chicago & E. I. R. Co.* v. *Hedges,* 105 Ind.
398 [7 N. E. 801, 805], the engine and tender of a train
passed over a crossing followed closely by several cars which
caused the injury complained of. In holding that the question
of contributory negligence was one for the jury, the court
said: ''The interval of time between the passing of the en-
gine and the coming of the train might, under the evidence,
have been found by the jury to have been very short; and
considering this fact in connection with the evidence that
the whistle was sounded as the engine approached; that the
bell was rung as the engine passed; that the cars, only six
feet in height, came on without signal; that the view was
obstructed; and that the intestate had no knowledge of the
time of the train—the jury might conclude that the atten-
tion of the intestate was diverted, so that, without negli-
gence on his part, he, for this reason, did not see the train
in time to escape; that his conduct was influenced by the
defendant's negligent acts, and he was thus thrown off his
guard, so that without his having acted otherwise than as
might have been excusable in a prudent man, under the cir-
cumstances, he was run down. Where the conduct of the
defendant was plainly negligent and caused the injury,
and there is dispute or doubt as to the negligence of the
plaintiff, the conclusion of one man, though learned in

the law, should not be forced upon 12 men sworn to try the facts. If there was any evidence tending to show that the plaintiff's intestate was thrown off his guard by such means as might have such effect upon an ordinary prudent man— and we think there was some such evidence—it was not wrong to submit to the jury the question of contributory negligence.''

In the case of *York* v. *Maine Central R. Co.*, 84 Me. 117 [18 L. R. A. 60, 24 Atl. 790, 792], the court said: ''But sometimes there may be indications that nothing will pass along the railroad for some minutes at least. The gates (where there are gates) may be up—a standing assurance to the traveler that no cars or engines are coming. (*Hooper* v. *Boston & M. R. Co.*, 81 Me. 260 [17 Atl. 64].) The retiring of a flagman from the crossing may inform the traveler that he may now cross safely. In view of the well-known and necessary rule requiring considerable space and time between successive trains, the passage of one train may be an indication that no other will pass the same way for some minutes. These and other acts upon the part of the railroad may throw the usually prudent traveler off his guard, and free him from the reproach of negligence in attempting to cross at such a time.''

Other cases which lend support to the exception we are considering are: *Bowen* v. *New York Cent. R. Co.*, 89 Hun, 594 [35 N. Y. Supp. 540], *Phillips* v. *Milwaukee etc. Co.*, 77 Wis. 349 [9 L. R. A. 521, 46 N. W. 543], *French* v. *Taunton etc. Co.*, 116 Mass. 537, and *Scott* v. *St. Louis etc. R. Co.*, 79 Ark. 137 [116 Am. St. Rep. 67, 9 Ann. Cas. 212, 95 S. W. 490]. The following cases do not recognize the exception to the general rule that one must stop and look and listen before entering upon a railway crossing or be adjudged guilty of contributory negligence: *Bush* v. *Union Pac. R. Co.*, 62 Kan. 709 [64 Pac. 624], *Long* v. *Pacific etc. R. Co.*, 74 Or. 502 [L. R. A. 1915F, 1151, 144 Pac. 462, 145 Pac. 1068], and *Durbin* v. *Oregon R. & N. Co.*, 17 Or. 5 [11 Am. St. Rep. 778, 17 Pac. 5].

The rule that one approaching an unguarded railroad crossing where his view is obstructed must stop, look and listen or be found guilty of contributory negligence is based upon the fact that the law has established a rule of conduct which the ordinarily prudent person must follow

under given and fixed circumstances. Where different circumstances are presented the reason for the rule fails. We believe that the passing of the passenger train in front of Lindsey was a sufficient indication to him that the tracks would remain clear for more than ninety seconds so that the *quantum* of care required of him as a reasonably prudent man before proceeding on to the tracks was a question of fact to be determined by the jury.

In the case of *Herbert* v. *Southern Pac. Co.*, 121 Cal. 227 [53 Pac. 651], the court said: "The rule is, that negligence is a question of fact for the jury, even when there is no conflict in the evidence, if different conclusions upon the subject can be rationally drawn from the evidence. This proposition has been frequently declared by the court. (Citing cases.) The rule is general and appellant presents a very long list of cases in which the rule has been stated. The effect of all is the same. If but one conclusion can reasonably be reached from the evidence, it is a question of law for the court; but if one sensible and impartial man might decide that the plaintiff had exercised ordinary care, and another equally sensible and impartial man that he had not exercised such care, it must be left for the jury. (*McKune* v. *Santa Clara Co.*, 110 Cal. 480 [42 Pac. 980].)'' (*Seller* v. *Market Street R. Co.*, 139 Cal. 268 [72 Pac. 1006]; *Hoff* v. *Los Angeles Pac. Co.*, 158 Cal. 596 [112 Pac. 53]; *Gregg* v. *Western Pac. Co.*, 193 Cal. 212 [223 Pac. 553].)

The following reasoning used in the case of *Vaca* v. *Southern Pac. Co.*, 91 Cal. App. 470 [267 Pac. 346, 349], is pertinent: "While a traveler about to cross a railroad track is generally charged with the duty of stopping and looking before crossing the tracks, in each particular case his discharge of that duty and his care or negligence is to be measured in the light of surrounding conditions and circumstances. It is true that he may not seek redress for any injury caused solely through his own carelessness, but in measuring his conduct a jury may take into consideration that the railroad company has created a condition which has caused the traveler to relax his own vigilance so that he is brought to his destruction or injury (*Scott* v. *San Bernardino Valley Co.*, 152 Cal. 610 [93 Pac. 677]; *Runnels* v. *United Railroads*, 175 Cal. 528 [166 Pac. 18]). It is only when the evidence is such that the court is impelled to say

that it is not in conflict on the facts and that from these facts reasonable men can draw but one inference, and that an inference pointing unerringly to the negligence of the plaintiff contributing to his own injury, that the law steps in and forbids the plaintiff a recovery (*Zibbell* v. *Southern Pac. Co.*, 160 Cal. 237, 240 [116 Pac. 513]). In *Smith* v. *Southern Pac. Co.*, 201 Cal. 57 [255 Pac. 500], the court uses this language: 'The rights and obligations of all persons using a public street are reciprocal. Each may rightfully expect that the other will, at the proper time, discharge his duty toward others. He cannot rely wholly on the care of others, nor, on that account, neglect to use the precautions which the particular situation demands of him. But he frequently must, to some extent, depend on others in such situations, and his conduct must be considered in view of that fact in determining whether or not he is negligent. His care or want of care in such cases is generally a matter to be determined by the jury from all the circumstances surrounding him at the time.' (See, also, *Marini* v. *Southern Pac. Co.*, 201 Cal. 392 [257 Pac. 74]; *Clark* v. *Bennett*, 123 Cal. 275, 277 [55 Pac. 908].)''

Applying these rules to the unusual facts and circumstances of this case, and having in mind the fact that the question of what would or would not constitute ordinary care on the part of deceased in approaching the crossing under these unusual facts and circumstances has not been fixed by a definite rule of law in this state, we therefore conclude that what was or was not ordinary care on his part was a question of fact properly left to the jury. The jury absolved the deceased from the charge of contributory negligence. Its finding is final and cannot be disturbed by us.

■ Appellants also attempt to predicate contributory negligence of deceased on the noise made by the work train in approaching the crossing. They argue that since this noise was heard by others, it was, or should have been heard by deceased and constituted sufficient warning of the approach of danger to require him to heed the warning and stop. Whether or not he heard or should have heard the noise was a question of fact for the jury. (*Skaggs* v. *Wilhour*, 210 Cal. 524 [292 Pac. 649].)

■ Appellants complain of an instruction given by the trial court at the request of respondents, as follows: ''Testi-

mony of several witnesses near the crossing where deceased met his death, to the effect that they heard no whistle of the train of the Pacific Electric Railway Company which collided with the truck of the deceased, until immediately prior to the accident, is sufficient, if believed by the jury, to warrant the conclusion that no such signal was given prior to said time, and you are instructed that a failure to give due and timely warning of the approach of said train would be negligence on the part of said motor-man and on the part of the Pacific Electric Railway Company."

They insist that this is an instruction on the weight and value of the evidence and therefore erroneous. In the case of *Keena* v. *United Railroads*, 197 Cal. 148 [239 Pac. 1061, 1063], it was said: "It is sufficient to say that the weight to be given to negative testimony often arises in railroad and other accident cases where it is claimed that signals were not given, and that in such cases, the question is purely for the jury, and it has frequently been held that negative evidence of this character is sufficient to sustain a verdict (Jones on Evidence [Horwitz], sec. 893, p. 400), even though it conflict with other evidence to the effect that a warning was actually given (*Thompson* v. *Los Angeles R. Co.*, 165 Cal. 748 [134 Pac. 709])."

The case of *Badostain* v. *Pacific Elec. Ry. Co., supra,* is to the same effect.

The instruction told the jury in effect that if they believed the testimony of the witnesses who did not hear the warning whistle blown or the bell rung on the work train, they might conclude that no such warnings had been given. The jury was elsewhere correctly instructed on the burden of proof; credibility of witnesses; that jurors were the sole judges of the value and effect of the evidence and are not bound to decide in conformity with the declarations of any number of witnesses which do not produce conviction in their minds; and that the testimony of one witness entitled to full credit is sufficient for the proof of any fact if it satisfied their minds, as against the testimony of other witnesses which did not so satisfy them. Taken in connection with the other instructions, we think the effect of the instruction in question was, to inform the jurors that if the negative testimony of the witnesses who did not hear warnings given by the work train produced conviction of

its truth in their minds, it would be sufficient to support the finding that such warnings had not been given. ▮ Appellants further complain of this instruction because of the use of the phrase therein, in referring to a warning whistle, of "immediately prior to the accident". They contend that this phrase is indefinite as to time and might be construed to refer to a whistle which the trainmen testified was sounded when the work train was about eight hundred feet northeasterly from the place of the accident. The word "immediately" is one of common use, the meaning of which is well understood. In Webster's International Dictionary it is defined as "without interval of time; without delay; straightway; instantly; at once". In Funk & Wagnall's Standard Dictionary it is defined as "without lapse of time; instantly; at once; without the intervention of anything". In the case of *Newkirk* v. *Gross,* 203 Ill. App. 79, when this word was used in an instruction it was held to mean "instantly, directly, without delay, forthwith", and that its use could not have misled the jury. Where a word of common import is used in an instruction the jury must be held to have understood it and applied to it its usual and ordinary meaning. We do not believe the use of this phrase could have misled the jury. While the verbiage of the instruction might have been improved upon, we conclude that when it is considered with the other instructions, no prejudicial error followed from its being given to the jury.

▮ Appellants also complain of an instruction given at the request of respondents, as follows: "If the jury finds from the evidence that the signal bell maintained at the crossing at the intersection of Hellman avenue with the tracks of the Pacific Electric Railway Company was out of order so that it rang continuously and had been ringing continuously for several days prior to the collision, whether a train was near the crossing or not, and that deceased used said crossing frequently while said bell was thus out of repair and that he knew of the bell's unreliability, then you are instructed that the ringing of said signal bell, or wig-wag bell, at and immediately prior to the attempt of the deceased to cross the track of the defendant Pacific Electric Railway Company, was no notice to him of the

498

approach of the work-train which later collided with his truck."

They contend that this instruction was on the facts and invaded the province of the jury. The court told the jury in this instruction that if the bell was out of order so that it rang continuously for several days without regard to approaching trains, and this fact was known to deceased, it gave him no warning of the approach of a train. This instruction gave no rule of law to the jury. That the ringing of the defective bell gave no warning to deceased was a deduction or conclusion drawn from the facts given in the balance of the instruction. Whether or not these facts were established by the evidence was correctly left to the jury. The conclusion to be drawn from them also should have been left to the jury. However, we fail to see how any other conclusion could have been drawn from these facts by one of average intelligence. The instruction merely stated a logical and obvious conclusion, "a mere commonplace within the general knowledge of jurors, and we do not think that either the giving or refusing of such an instructions would warrant a reversal". (*Kauffman* v. *Maier*, 94 Cal. 269 [18 L. R. A. 124, 29 Pac. 481]; *Hirshfeld* v. *Dana*, 193 Cal. 142 [223 Pac. 451, 457].)

Apellants complain of the ruling of the court in permitting Elbert Lindsey, son, and Lillian E. Lindsey, widow of deceased, over their objection, to testify to the habit of deceased when about to cross a railroad track. When Elbert Lindsey was on the witness-stand the following occurred: "(Q.) By Mr. Wiseman: Are you familiar with the habits of your father as to stopping and looking and listening at railroad crossings? Mr. Morris: I object to that as not in rebuttal, incompetent, irrelevant and immaterial. The Court: The objection is overruled. (A.) Yes sir. Q. What were his habits in that regard? Mr. Morris: Objected to as irrelevant and immaterial and incompetent. There is evidence here of what was done on this occasion. The Court: The objection is overruled. (A.) He would always stop and look and listen."

During the testimony of Mrs. Lindsey, the following occurred: "(Q.) Are you familiar with his habits, regarding his habits at railroad crossings? (A.) I am. Mr. Morris: I object to that as incompetent, irrelevant and im-

material, because the evidence shows that there were eye-witnesses to the accident. The Court: Objection overruled. (A.) He was very strict; he stopped, looked and listened." It must be conceded that these rulings were erroneous.

The evidence is open to objection on two grounds: First, because it is too general, and second, because there were two eye-witnesses to the accident. When admissible, evidence of the habit of deceased should have been limited to habit at the place of the accident. Evidence at another place and under different circumstances has been held too remote. (*Blackford* v. *Beckworth,* 90 Cal. App. 37 [265 Pac. 514].) ██ Evidence of habit is not admissible where there are eye-witnesses to an accident. The *dicta* in the case of *Wallis* v. *Southern Pac. Co.,* 184 Cal. 662 [15 A. L. R. 117, 195 Pac. 408], upon which the trial court seemed to have based its ruling in admitting this evidence has not been followed in later cases. The admission of this class of evidence is now limited to cases where there are no eye-witnesses to the accident. (*Starr* v. *Los Angeles R. Corp.,* 187 Cal. 270 [201 Pac. 599]; *Chappell* v. *San Diego etc. Co.,* 201 Cal. 560 [258 Pac. 73]; *People* v. *Crossan,* 87 Cal. App. 5 [261 Pac. 531]; *Blackford* v. *Beckworth, supra; Gorman* v. *County of Sacramento,* 92 Cal. App. 656 [268 Pac. 1083].)

██ We have quoted all of the evidence in the record concerning the habit of deceased in stopping before crossing a railroad. As we have observed, two witnesses testified that he did not stop and no witness contradicted this evidence. After reading the record we have concluded that deceased did not stop. The jurors are presumed to be reasonable human beings subject to reasonable mental reactions. We cannot see how a reasonable person would give the slight evidence of habit appearing in the record any serious consideration in view of the positive testimony of two witnesses that deceased did not stop before going on the tracks before the collision. We therefore conclude that under the facts and circumstances of the instant case, the admission of this evidence was not prejudicial error. While the evidence is sharply conflicting there is sufficient material evidence in the record to support the conclusion that the proper warning signals were not given by the work train on its approach to the crossing. This establishes neg-

ligence on the part of the appellants which the jury found was the proximate cause of the injury to deceased. Under the peculiar circumstances of this case we hold that the question of the contributory negligence of deceased was properly left to the jury. The verdict resolved this question against appellants. While there were technical errors of law committed in the giving of an instruction and in rulings on the admission of evidence we do not consider them sufficiently prejudicial to warrant a reversal of the judgment.

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 2, 1931, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 2, 1931.