[Civ. No. 5730.   Fourth Dist.   Nov. 14, 1958.]

CORA E. S. SIMONTON, Respondent, v. EDGAR CRAWFORD PIERCE, Appellant.

Thompson & Colegate, H. L. Thompson, Roy W. Colegate and Robert E. Dauber for Appellant.

David N. M. Berk and John B. Strahan for Respondent.

GRIFFIN, P. J.—In this damage action arising out of a collision between two automobiles, which case was tried by the court without a jury, it rendered judgment in favor of plaintiff-respondent against defendant-appellant. A motion for new trial was denied.

Defendant and his wife were bound for Oklahoma in their Chevrolet sedan, and were traveling in the south lane, easterly, on United States Highway 99, in Beaumont, on May 14, 1954, about 6:45 a.m. It was dark enough to require lights. Veile Street in said town runs north and south and intersects United States Highway 99 at about right angles. There is a boulevard stop sign about 10-15 feet south of a stop line painted on the pavement across Veile Street at the south entrance to the intersection. United States Highway 99, at that point, consists of two lanes east and two lanes west. The two south lanes are divided by a white line and together occupy about 32 feet of the roadway which is abutted on the south by a 4-foot shoulder. At the time there was a rolling spotted fog hanging over the surrounding ground. At times it would be clear and later nothing could be seen. The visibility was poor. Defendant's car had its dim lights burning.

Plaintiff, aged 63, was driving north on Veile Street in her Studebaker sedan about the same time and the headlights on her car were burning. She testified she stopped it at the white line; that she rolled down her front left window and saw a car approaching her from the west but it turned south on Veile

Street; that as she rolled up her window and started her car she looked west and saw defendant's car coming out of a heavy roll of fog, very close to her (about 5 feet) and it was coming (without lights) directly at her car which was entering the south one-half of the intersection; that she immediately turned to her right to avoid a direct collision with it but it struck her car near the left front portion of it and after her car had proceeded about one or two car lengths; that she then estimated her speed at about 5-10 miles per hour; that defendant's car shoved her car sideways east on Highway 99 for some distance (about the width of a car). She testified she later accused defendant of driving his car without lights and admitted the officer pointed out to her that at least one of defendant's front dim lights was still burning. The right front fender, light and bumper of defendant's car had been crushed by the impact.

It was defendant's testimony that as he approached the westerly city limit sign he was traveling about 35 miles per hour (the highway there was zoned for a 35-mile limit and a sign to this effect was posted near-by); that he first saw plaintiff's car when he was 150-200 feet from the intersection involved; that there was some fog in the atmosphere; that the headlights on his car were on low beam at all times; that he believed plaintiff's car was either stopped or traveling slowly at a speed of 3 to 5 miles per hour when he first saw it some-where between the stop sign and the stop line (In his deposition, however, he testified it was either in a "standing or stopped position"); that about 70 feet from the intersection and as soon as he determined plaintiff was not going to stop, he applied his brakes, honked his horn, and the cars collided as described.

A police officer, Miller, testified for plaintiff. The point of impact was established as being about 30 feet north of the white stop line. There were approximately 60 feet of skid marks left by defendant's vehicle leading to the point of impact. Defendant's vehicle, after pushing plaintiff's car, came to final rest about 10 feet east of the point of impact. The officer described the surrounding terrain and conditions existing at the time he arrived. He estimated visibility was between 200 and 400 feet. The main question on this appeal revolves around the testimony of this officer whom the plaintiff attempted to qualify as an expert in relation to his opinion as to the speed of defendant's car at the time, based on the tire skid marks and other circumstances indicated. The

claimed qualifications of the officer to testify as an expert are that at the time of the accident he had been on the police force a little over one year, and at the time of the trial nearly four years; that during this time he had investigated several accidents; that he had attended a police officers' Association School for five weeks in reference to investigating work pertaining to accidents, and had looked at some reference works; that as a result of his study he learned that vehicles travel a certain number of feet per second at different speeds and that the average reaction time of a driver is $\frac{3}{4}$ of a second. Based upon a propounded question the trial judge allowed the witness to answer:

"Q. Taking into account the fact that there was a fog on the morning of May 14, 1954, at or about 6:45 in the morning, that there was dampness some of which may have gone on the roads; the fact that this road had a degree of efficiency to which you testified, about 75 per cent; after taking into account the—taking into account its abrasive quality and the dampness, and taking further into account the length of the skid marks as you observed them, the debris on the highway as you saw it, the damage to both vehicle number '1' and vehicle number '2,' and the distance that both vehicles traveled after impact, do you have a present opinion with respect to the speed at which vehicle number '1' (defendant's car) traveled at the time this accident took place?"

Further questioning: "Taking into account the fact there were 60 feet of skid marks, there was a fog, the pavement was slightly damp; taking into account the abrasive quality of the road, the physical debris you saw at the point of impact and the length of skid marks, the distance the vehicles traveled after the point of impact, are you able to form a present opinion with respect to the speed at which vehicle number '1' was traveling at the point of impact?"

His answer was to the effect that in his opinion the slowest possible speed defendant's car was traveling at the time defendant commenced to apply the brakes was 40 miles per hour and 10 miles per hour at the time of the collision, and that there would have been room for defendant to pass to the south of plaintiff's car on the highway to avoid the accident had he chosen to do so. This was followed by another question comprising the same elements inquiring if the witness had "an opinion with respect to what a reasonable or prudent driver would drive his vehicle at having due regard for the traffic

on—the surface and width of the highway at that time.'' He answered, between 30 and 35 miles per hour, approximately, in his opinion, ''that is the safest anyone should go.''

In *Linde* v. *Emmick*, 16 Cal.App.2d 676 [61 P.2d 338], where a greater foundation was laid for the reception of such evidence, the court held the question of the qualification of the witness to testify as an expert witness was a matter within the discretion of the trial judge and that the weight of authority allows a duly qualified expert to give his opinion of speed, based upon the length of skid marks indicated. It further held that where the hypothetical question was incorrect and not in accord with the evidence and the important factor of the condition of the brakes was omitted the reception of an opinion, based on such assumption, was error and that an expert opinion as to the angle the cars were thrown, based on the damage to each car and its position when stopped was improper.

This court held in *Wells Truckways, Ltd.* v. *Cebrian*, 122 Cal.App.2d 666 [265 P.2d 557], that while there is some distinction between admission in evidence of opinions of experts based on facts related to them in hypothetical questions, and of opinions of experts or nonexperts when testifying about facts they have personally observed, either form of such evidence is admissible when complying with required tests; that where the witness has disclosed sufficient knowledge of the subject to entitle his opinion to go to the jury, the question of degree of knowledge goes more to the weight than to the admissibility; that where circumstantial evidence in a case involving the collision of one tractor and trailer with another tractor and trailer was not necessarily self-explanatory to the layman's eye, and it was reasonable for the trial judge to believe that the jurors needed aid, even if they had been at the scene of the accident on the night in question, to ascertain clues leading to the conclusions reached, it was proper, if required facts were established, to admit the opinion of an expert based on those facts in evidence, which he personally knew, for consideration of the jury if the opinion, because of the witness's particular knowledge and experience, could aid the jury in drawing correct inferences from the raw and unsorted facts. In that case the witness was allowed to express an opinion as to the point of impact, angle of gouges in the pavement, and certain results from facts known by the witness. The qualification of the expert in that case was not

questioned. No expert opinion was ventured as to the speed of the vehicles involved.

In *Norman* v. *Tully*, 149 Cal.App.2d 530 [308 P.2d 875], we considered the question of a duly qualified witness to testify whether in his opinion ''20 miles per hour, on a loaded truck, is as fast'' as the Grapevine Grade at a stated point should be negotiated. Therein is cited *Zelayeta* v. *Pacific Greyhound Lines*, 104 Cal.App.2d 716, 726, 727 [232 P.2d 572].

■ When facts giving rise to negligence are in the experience and understanding of men of intelligence and education the question of negligence must be determined without the aid of expert testimony. (*Shafter* v. *Evans*, 53 Cal. 32; *Wilkerson* v. *City of El Monte*, 17 Cal.App.2d 615 [62 P.2d 790].)

■ Upon examination of the authorities it might well appear that as to some aspects of the case the witness was somewhat lacking in qualifications as compared to the qualifications of witnesses in the cases cited, and that he did not include all of the factors necessary and did not have sufficient data upon which to base or express an expert opinion in relation to the speed of defendant's car at the time indicated or as to what would or would not be a reasonable speed under the law applicable or under the conditions described. Even if it might be assumed, only for the purpose of argument, that error was committed in this respect, it would not, under the circumstances of this case, be prejudicial. This was a trial before the court sitting without a jury. There was sufficient competent evidence, without the aid of the opinions expressed, justifying the trial court in reaching the same conclusion and finding that defendant was negligent. (*Housel* v. *Pacific Electric Ry. Co.*, 177 Cal. 728 [171 P. 956]; *Wheeler* v. *Hays*, 3 Cal. 284.) ■ The general rule prevailing in California, where the case is tried before the court alone, is that where there is competent independent evidence in the record which supports the judgment without recourse to the testimony erroneously admitted, the error is not prejudicial as it will be presumed on appeal that the trial judge considered and relied on the competent evidence in making his findings and rendering the judgment. (*Bixby* v. *Bixby*, 120 Cal.App.2d 495, 499 [261 P.2d 286], and cases cited.)

■ The remaining question is whether the evidence establishes contributory negligence on the part of plaintiff, as a matter of law. Had the trial court found that plaintiff was guilty of such contributory negligence, as a matter of fact,

the evidence produced might well have supported such a finding. Such is not the case. There is substantial conflict in the evidence in this respect. It cannot be said as a matter of law, that plaintiff was guilty of contributory negligence. (*Alwood* v. *City of Los Angeles*, 139 Cal.App.2d 49 [293 P.2d 69]; *Toby* v. *Hubbard*, 125 Cal.App. 261 [13 P.2d 869]; *Cummins* v. *Yellow & Checker Cab Co.*, 127 Cal.App. 170 [15 P.2d 536]; *Nitta* v. *Haslam*, 138 Cal.App. 736 [33 P.2d 678]; *Moore* v. *Ruth*, 139 Cal.App.2d 70 [292 P.2d 939]; *Matsuda* v. *Luond*, 52 Cal.App.2d 453 [126 P.2d 359].) The motion for a new trial was properly denied.

Judgment affirmed.

Shepard, J., and Coughlin, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.