BALTHIS, J.
 

 These appeals are taken from the judgments entered pursuant to verdicts of the jury in favor of defendant and against plaintiffs,
 

 
 *315
 
 Plaintiffs Chadwick and Heller filed actions against defendant seeking damages allegedly resulting from an automobile accident in which plaintiffs and defendant were involved.
 

 The two cases were consolidated for trial and separate judgments based upon verdicts of the jury have been entered.
 

 The facts viewed most favorably to defendant are as follows:
 

 The accident happened shortly before midnight on January 9, 1959, at the intersection of Hollywood Boulevard and Vista Street in the City of Los Angeles. At the time of the accident defendant was driving along Vista Street in a northerly direction. He was returning from a drugstore with a prescription for a sick child. Plaintiff Robert Heller, age 16, was driving on Hollywood Boulevard in a westerly direction with plaintiff Joyce Chadwick, age 14, as a guest passenger in the Heller vehicle. Plaintiffs were returning to the Chadwick residence after attending a theatrical performance and going to a restaurant.
 

 The point of impact as established by the testimony of the investigating officer was 10 feet west of the east curb of Vista and 14 feet south of the north curb of Hollywood Boulevard. Traffic on Vista entering Hollywood Boulevard from both the north and south is controlled by boulevard stop signs but there are no controls regulating traffic on Hollywood Boulevard at this intersection. The view of westbound Hollywood Boulevard traffic is not good from behind the stop sign for traffic proceeding northerly on Vista because numerous physical obstructions block a clear and complete view. Prom the curb line, however, oncoming traffic may be seen. The intersection is illuminated by an overhead street light located approximately 30 feet west of the point of impact.
 

 The investigating officer testified that following the accident he found there were 33 feet of skid marks left by plaintiffs’ vehicle ending at the point of impact and extending 23 feet east of the easterly curb line of Vista Street. At the point of impact plaintiffs’ vehicle was almost completely stopped; however, severe front-end damage resulted to plaintiffs’ car.
 

 Plaintiff Heller could not state the exact speed of defendant’s vehicle at the time of the impact but in response to an inquiry stated: “I don’t know but it looked fast; but I could not say honestly how fast it was going at all. ’ ’
 

 Defendant testified that he had stopped at the south side limit line (at the stop sign) and also at the curb line to look up and down Hollywood Boulevard; while he was at the limit line about 20 cars passed from both east and west; when
 
 *316
 
 he stopped at the curb line there were a couple of cars eastbound and he waited until they had cleared; at the same time there were some westbound ears which cleared about the same time; after these had cleared he then started into the intersection and did not again stop until he “ended up across the street after the impact”; at the curb line he looked to his left and also as he started into the intersection he looked to his right just as he came into the intersection; and further that at no time did he see plaintiffs’ car.
 

 Defendant’s vehicle did not stop at or near the point of impact but continued on across Hollywood Boulevard in a northerly direction where it jumped the curb, struck a boulevard stop sign on the northwest corner of the intersection, struck a guy wire and then struck a concrete block wall, damaging the same and knocking some of the blocks out of the wall. The vehicle then came to a rest north of Hollywood Boulevard and west of Vista at the northwest corner of the intersection.
 

 Defendant stated he did not believe he could have been going over 15 miles per hour at the time the accident happened, having started from a dead stop and having traveled about 30 feet from the stop.
 

 Plaintiffs’ contentions on appeal are:
 

 (1) The evidence showed conclusively that defendant was negligent in starting across the street when plaintiffs’ automobile constituted an “immediate hazard” under section 552, subdivision (a) [Veh. Code] (in effect at the time of the accident; now §21802), and defendant’s negligence was the sole and proximate cause of the collision. There was no evidence which would support a finding that plaintiff Heller was guilty of contributory negligence and as to plaintiff Chadwick (a passenger) there could be no issue of contributory negligence.
 

 (2) The trial court erred in giving certain instructions to the jury.
 

 (3) Certain remarks and observations of the trial court during the trial constituted prejudicial misconduct.
 

 The first contention of plaintiffs is in effect an argument that there was no substantial evidence to support the verdicts in favor of defendant. Since the jury found against both plaintiffs and there was no issue of contributory negligence as to plaintiff Chadwick, the jury must have concluded that there was no negligence on the part of defendant which proximately caused the collision.
 
 *317
 
 Where insufficiency of the evidence is urged as a ground for reversal on appeal it is established that “the evidence must be viewed most favorably to respondent, and all reasonable inferences should be indulged in to uphold the judgment. ’ ’
 
 (Peterson
 
 v.
 
 Grieger,
 
 57 Cal.2d 43, 51-52 [17 Cal.Rptr. 828, 367 P.2d 420].)
 

 Plaintiffs believe they have established that defendant was negligent as a matter of law on two grounds: (a) because defendant testified that he did not see plaintiffs’ ear and (b) because defendant proceeded to pull out into the path of plaintiffs’ car which was an immediate hazard.
 

 Giving full credence and effect to defendant’s testimony, it would negative any negligence on his part and we believe the verdicts in his favor are supported by substantial evidence. Defendant testified that he looked both ways on Hollywood Boulevard before entering the intersection and plaintiffs’ car was not in sight when he proceeded across the street looking straight ahead; that he had gone 25 feet past the center of the intersection and was within 14 feet of the north side of the street before being struck.
 

 The same claim of “negligence as a matter of law” was advanced and rejected in
 
 Silva
 
 v.
 
 Pim,
 
 178 Cal.App.2d 218 [2 Cal.Rptr. 860], In that case judgment was in favor of plaintiffs Silva. Defendant appealed contending “that the evidence shows as a matter of law that Silva was eontributorily negligent. ...” Defendant argued that the testimony of Mr. Silva that he looked but saw no approaching ear was improbable, irreconcilable with the physical facts, and entitled to no credence. In affirming the judgment the court stated (pp. 224, 225) :
 

 1 ‘‘ Thus we find on the question of negligence or contributory negligence of a party as a matter of law that if the party involved did exercise some care, the question of whether or not that care was all that an ordinarily reasonable person would have taken under the circumstances of the ease continues to be a question of fact for determination of the court or jury. As was said in
 
 Kalfus
 
 v.
 
 Fraze,
 
 136 Cal.App.2d 415, 430 [288 P.2d 967] :
 

 “ ‘Although the general rule is that a driver’s failure to maintain such lookout as would enable him to observe all that may be readily seen may constitute negligence as a matter of law (citations), where, as in the present case, the driver testifies that he did in fact look, the question of whether
 
 *318
 
 he looked with proper care and saw all that he should have seen is one of fact for the determination of the court or jury. ’
 

 “In
 
 Startup
 
 v.
 
 Pacific Electric Ry. Co.,
 
 29 Cal.2d 866, 871 [180 P.2d 896], the court said: ‘. . . “where it is shown that a [driver] has exercised some care, the question whether or not the care actually exercised was due and sufficient will always be a matter for determination by the jury.” ’ See also
 
 Swingle
 
 v.
 
 Hoffman,
 
 159 Cal.App.2d 104 [323 P.2d 581]. Numerous other authorities repeat the same rule in different language. We believe it unnecessary to analyze any others. ’ ’
 

 The evidence does not show that defendant was negligent as a matter of law in not seeing plaintiffs’ ear. As the above cited authorities state, it was a question for the jury. (See also
 
 Stafford
 
 v.
 
 Alexander,
 
 182 Cal.App.2d 301, 307-310 [6 Cal.Rptr. 219].)
 

 Likewise it was a question for the jury as to whether defendant did proceed to enter the intersection at a time when plaintiffs’ car was an immediate hazard.
 

 Plaintiffs’ next contention is that the court erred in giving certain instructions.
 

 The court with prior approval of all counsel expressed the desire to “pre-instruct” the jury during the course of the trial whenever certain instructions on the law would be applicable and also to give additional instructions or repeat certain instructions at the conclusion of the trial.
 

 Near the beginning of the trial the court instructed and read to the jury certain segments of the Vehicle Code. He read former sections 550 (“Right of Way”), 577 (“Obedience to Stop Signs”) and the precise language of 552 which is the turning point of this ease.
 

 The court also instructed the jury that if any of the above sections were violated it would be negligence as a matter of law.
 

 At the conclusion of the trial, the court delineated the crucial issue which the jury must decide and again referred to section 552 in these terms:
 

 “The driver of any vehicle approaching a through highway and coming to a stop sign is required to stop and yield the right of way to any other vehicles which have entered the intersection.
 
 That portion is not involved
 
 here; but likewise, he must yield to vehicles which are approaching so closely on the through highway as to constitute an immediate hazard.
 

 “If the driver approaching the through highway at the stop
 
 *319
 
 sign does yield to those vehicles approaching so closely as to be an immediate hazard, he may enter the intersection and all vehicles then approaching the intersection must yield the right of way to him.
 

 “In this particular case the vital issue, therefore, seems to be resolved around these two principles, and it comes down to the question of whether or not the defendant entered this intersection at a time when vehicles were so closely approaching as to constitute an immediate hazard to him. If they were, then he did not have the right of way. If when he entered the intersection they were not an immediate hazard to him, he did have the right of way and until he was advised otherwise he had the right to assume that the approaching vehicle and its driver would observe the law and would yield the right of way if he was entitled to it. So that is the basic question you must determine in this case.” (Italics added.)
 

 Plaintiffs argue that the effect of the instruction was to tell the jury that defendant had made the boulevard stop because of the statement “ [t]hat portion [of the statute dealing with the necessity of stopping before entering the intersection] is not involved here.” Plaintiffs then conclude that this issue was taken away from the jury.
 

 However, the argument made overlooks two important factors. First, the court had previously read former section 577, Vehicle Code, dealing with obedience to stop signs and had clearly instructed the jury that a violation of this section would constitute negligence as a matter of law.
 

 Secondly, there was no real factual issue made about the defendant having stopped at the “stop sign” on Hollywood Boulevard before entering the intersection. Defendant testified directly and positively that he made the stop; plaintiffs were unable to offer any evidence on the point. While it is true, as plaintiffs point out, that the jury could disbelieve defendant’s testimony on this point, it is clear considering all the instructions they did not. As pointed out, the jury had already been instructed on the requirement of stopping under section 577.
 

 No error resulted by the court delineating the critical issue which the jury had to decide. The instruction based on section 552 is concerned primarily with entering a through highway after a stop had been made at the stop sign. If defendant had not stopped he would have been in violation of section 577 and negligent as a matter of law.
 

 As defendant testified he made the stop and as there was
 
 *320
 
 no evidence to the contrary, the real issue as developed by the evidence seemed to be the question of whether plaintiffs’ car was an immediate hazard when defendant entered the intersection. The testimony of defendant that he stopped twice and waited for at least 20 cars to pass must have been believed and along with the factual determination that plaintiffs’ car did not constitute an immediate hazard, the jury found in favor of defendant under both section 577 (dealing with the duty to stop) and section 552 (dealing with entering the intersection after stopping).
 

 The instructions given were complete, accurate and fair. It does not appear how the jury could have been misled to the prejudice of plaintiffs by the final instruction as to section 552 as given.
 

 Plaintiffs’ counsel further contend that the trial judge made numerous derogatory, caustic, sarcastic, intemperate and unjudicial comments to them which were “intended to belittle plaintiffs’ counsel and heap ridicule upon him.”
 

 Plaintiffs have quoted in their brief many of these comments of the trial judge. However, the excerpted portions did not fairly depict the circumstances and surroundings of the statements. Upon considering fully all of the allegedly derogatory comments in context and including portions omitted in plaintiff’s brief, we find no prejudicial misconduct in any of the trial judge’s statements.
 

 In addition it should be noted that with one possible exception plaintiffs said nothing and requested no admonitions concerning the trial court’s remarks which they now feel are so prejudicial.
 

 As stated in
 
 Shivers
 
 v.
 
 Palmer,
 
 59 Cal.App.2d 572, 584 [139 P.2d 952]: “If therefore, counsel for appellant regarded the statement made by the trial judge as detrimental to their client’s cause they should have offered complaint thereto; requested the court to instruct the jury to disregard the remarks made from the bench, or to declare a mistrial.”
 

 The judgment in each case in favor of defendant is affirmed.
 

 The purported appeal from the order denying plaintiffs’ motion for new trial is dismissed because said order is nonappealable
 
 (Rodriguez
 
 v.
 
 Barnett,
 
 52 Cal.2d 154 [338 P.2d 907]).
 

 Burke, P. J., and Jefferson, J., concurred.