[Civ. No. 302. Fifth Dist. Feb. 19, 1964.]

BENJAMIN F. LAYMON, Cross-complainant and Respondent, v. THEODORE R. SIMPSON et al., Cross-defendants and Appellants.

Leonard J. Zins for Cross-defendants and Appellants.

McCormick, Barstow, Sheppard, Coyle & Best and Hollis G. Best for Cross-complainant and Respondent.

52

CONLEY, P. J.—This litigation had its inception in an intersection collision at Cornelia and Floral Avenues in Fresno County. The action was filed by Theodore R. Simpson; he alleged that Benjamin F. Laymon was negligent and responsible for the collision and the injuries suffered by him. Mr. Laymon answered and cross-complained against Mr. Simpson and his employer, California Milling Corporation. The jury brought in a verdict for the cross-complainant in the sum of $12,500. The plaintiff was represented by counsel of his choice; another attorney represented him and his employer as cross-defendants.

The plaintiff, as such, does not appeal from the judgment against him (which was confirmed by the trial judge on motion for new trial); he and his employer as cross-defendants appeal solely by reason of the judgment against them on the cross-complaint. In their closing brief, they say ". . . appellants point out that they have conceded that appellant Simpson, the plaintiff herein, was negligent and therefore this is not an issue before the Court." The sole point urged is that the cross-complainant, Laymon, was guilty of contributory negligence as a matter of law which bars him from recovery.

As every lawyer knows, it is a rare thing that appellants ask us to do, namely, to overrule the factual finding of a jury, approved by the trial judge on motion for a new trial, and to find that the cross-complainant was guilty of contributory negligence as a matter of law.

In analyzing the record, we must keep in mind the principle that the judgment of the lower court is presumed to be correct (3 Witkin, Cal. Procedure, Appeal, § 79, pp. 2238-2239), and that: "*Where the evidence is in conflict, the appellate court will not disturb the verdict of the jury...*" (3 Witkin, Cal. Procedure, Appeal, § 84, p. 2245.) This court must ". . . presume that the evidence in support of the verdict ... is true, and will construe it and resolve every substantial conflict as favorably as possible in support thereof." (4 Cal.Jur.2d, Appeal and Error, § 575, p. 449.)

As is said in 4 California Jurisprudence 2d, Appeal and Error, section 606, at page 487: "Before an appellate court is justified in reversing a judgment on the ground of insufficiency of evidence, it must appear from the record that, accepting the full force of the evidence adduced, together with every inference favorable to the prevailing party that may be drawn therefrom, and excluding all evidence in con-

flict therewith, it still appears that the law precludes that prevailing party from recovering a judgment. The evidence must be considered by the appellate court, but not weighed as against the conflicting evidence, and it is immaterial that the appellate court would have determined that the weight of the evidence favored the appellant.''

In *Anthony* v. *Hobbie*, 25 Cal.2d 814, 818 [155 P.2d 826], it is said: ''The rule has been stated in various ways in a legion of cases, that contributory negligence is not established as a matter of law unless the only reasonable hypothesis is that such negligence exists; that reasonable or sensible men could have drawn that conclusion and none other; that where there are different inferences that may be drawn, one for and one against, the one against will be followed; and that before it can be held as a matter of law that contributory negligence exists, the evidence must point unerringly to that conclusion. [Citations.]''

*Napoli* v. *Hunt*, 141 Cal.App.2d 782 [297 P.2d 633], involving a two-car intersection accident, is in accord. *Silva* v. *Pim*, 178 Cal.App.2d 218 [2 Cal.Rptr. 860] is to the same effect; the facts there are reminiscent of those in the present action including the fact the appellant's vehicle was struck on the side by the front end of the respondent's car; the same contention was raised on appeal, namely, that the respondent was guilty of contributory negligence as a matter of law. In affirming the judgment the court states at page 224: ''The general substance of appellant's contention revolves around certain mathematical calculations of time, distance and speed. As was said in *Green* v. *Key System Transit Lines*, 116 Cal.App.2d 512 at 521 [253 P.2d 780]:

' ''If, after trial, an appellate court attempted to weigh every one of these impressions which may seem contradictory by rules of the exact sciences, few verdicts would stand.'' '

''In *Nagamatsu* v. *Roher*, 10 Cal.App.2d 752, 755 [53 P.2d 174], the court said: 'As has been frequently pointed out in cases of this nature such arguments are unreliable because they fail to take into account the human element, what may have been done by the respective drivers, and because of the many uncertainties which necessarily exist in such matters as the respective weights of the cars, the respective speeds, the exact positions, the force and direction of the blows, and many other elements.'

''In *Swatzell* v. *Pacific Greyhound Lines*, 161 Cal.App.2d 544, 546 [326 P.2d 854], the court said: 'It must be remem-

bered, testimony of a witness concerning time, speed or distance, particularly when the case involves moving vehicles which collide at an intersection are only estimates and can never be exact. The determination of who is right or wrong is not therefore the result of mathematical calculation.' ''

The opinion in a recent case involving an intersection collision, *Chadwick* v. *Condit*, 205 Cal.App.2d 313 [23 Cal.Rptr. 245], discusses the right-of-way statutes. There, a two-car accident occurred at a controlled intersection. Plaintiffs appealed from a judgment after verdict on three grounds, one of which was that the evidence conclusively showed negligence of the defendant as a matter of law. In affirming the defendant's judgment the court quoted with approval from the opinion in *Silva* v. *Pim, supra,* to the effect that where a party exercises some care the question of contributory negligence is one of fact for the jury.

 It seems clear generally that in an accident of the type with which we are dealing the negligence of either driver is not to be decided as a matter of law but is a question of fact to be determined by the jury.

 The question to be determined is whether or not there is substantial evidence which, if believed by the jury, would have warranted their implied finding that Mr. Laymon was not guilty of contributory negligence. Counsel for the appellants humanly assumes that the evidence produced by his client as opposed to that put forward by the opposing side is correct, but a proper appreciation of the differing functions of a trial court and an appellate court does not permit us to follow this assumption. In a review of this kind, it is incumbent upon us to assume that every item of testimony favoring the successful party is true and that every inference which can legitimately be drawn from the evidence favorable to the prevailing party is also correct. We shall apply this approved technique in our brief review of the evidence.

Theodore R. Simpson, the plaintiff and cross-defendant, at the time of the accident was 57 years old. He testified that he had six children and 22 grandchildren; that he had been involved in three previous automobile accidents; that he was driving a 1961 Chevrolet four-door sedan in an easterly direction on Floral Avenue and approaching Cornelia Avenue. He was returning from a ranch owned by his employer located approximately 4 miles west of the intersection. Both Cornelia and Floral were 24 feet wide and both had a paved or

oiled surface. It is perhaps worth noting that Cornelia Avenue had a white center line painted on it while Floral had no such marking. The intersection was not controlled by mechanical devices or stop signs. Mr. Simpson's automobile was new. He had driven it only about one week.

Mr. Simpson testified that he does not think that he slowed down as he approached the intersection. He was quite familiar with it having frequently driven through it in the course of his employer's business. When asked how fast he was going, he said that he did not know his speed, but that he was breaking in a new car and "I don't believe I would be exceeding the speed limit" of 65 miles per hour. He first said he couldn't tell whether he looked to his right, but then thought that probably he must have done so when 100 feet from the intersection. He did not apply his brakes; he was not aware of the presence of the other motor vehicle until he looked up and saw it about a car length, or as he thought approximately 18 feet, away from him. There was a house on the southwest corner of the intersection, but the testimony of the California highway patrol officer showed that it was so located that it did not interfere with vision so as to require a lower statutory speed than that applicable to the open highway. (Veh. Code, §§ 22349, 22352, subd. (a)(2).)

Mr. Laymon testified that he was 45 years of age and that he was married and had one son; he was a farmer operating leased land in two parts of the county. He was driving a 1960 GMC 1½-ton pickup truck from one of his ranches in a northerly direction on Cornelia Avenue at a speed of between 40 and 50 miles per hour. His pickup was loaded with approximately 300 pounds of farm machinery. He had passed through this intersection 10 to 12 times within the last month and knew that it was an open intersection without control by mechanical contrivances or stop signs; he did not change his speed as he approached the intersection; he looked to his right and saw no cars; when he was approximately one car length or about 20 feet, from the entrance to the intersection he first saw appellant's car coming from his left, and at that time he put on his brakes full force and kept them on up to the point of impact. He was positive that his brakes did take effect.

The highway patrolman who investigated the accident, stated that in his opinion the point of impact was 3 feet east of the center line of Cornelia Avenue and 9 feet south of the center of Floral Avenue. The tire marks made by the pickup

truck had a length of 9 feet in the northbound lane of Cornelia prior to the point of impact; this would mean that there were about 6 feet of tire marks made before entering the intersection. In determining whether or not the cross-complainant was guilty of negligence, the jury could well have considered the following factors:

1) The mechanical condition of the pickup truck;

2) The speed of the pickup truck;

3) Who had the right of way;

4) Whether the cross-complainant exercised due care in making observations as he approached the intersection;

5) What was the proximate cause of the accident?

We shall examine these questions briefly in turn, keeping always in mind that we are not attempting to usurp the function of the jury, but are simply inquiring whether the jurors had before them evidentiary matter which would have warranted them in reaching their final conclusion.

1) *Mechanical condition of the pickup truck.*

The truck was in good running condition, the brakes being proper; there is nothing in this respect that shows any negligence on the part of the cross-complainant.

2) *Speed of the pickup truck.*

The uncontradicted testimony of Officer Hess was that this was an intersection at which the normal statutory speed did not have to be cut down because of obstructions. The speed of 40 to 50 miles per hour testified to by the cross-complainant was not in itself a breach of any statutory limit in this locality.

3) *Who had the right of way?*

The cross-defendants contend that because the pickup truck struck the side of the Chevrolet, it necessarily follows that Mr. Simpson had the right of way. In this connection section 21800 of the Vehicle Code provides as follows: "[Uncontrolled Intersection.] (a) The driver of a vehicle approaching an intersection shall yield the right-of-way to a vehicle which has entered the intersection from a different highway.

"(b) When two vehicles enter an intersection from different highways at the same time the driver of the vehicle on the left shall yield the right-of-way to the driver of the vehicle on his right.

"(c) This section shall not apply at intersections controlled by an official traffic control signal, stop sign, or yield

right-of-way sign, or to vehicles approaching each other from opposite directions when the driver of one of the vehicles is intending to or is making a left turn.''

It should be kept in mind that, by reason of Mr. Simpson's testimony, the jurors had a right to believe that he was traveling faster than Mr. Laymon even though Mr. Laymon, as a witness, thought the two cars were moving at about the same speed. It is conceded that Mr. Simpson did not put on his brakes, while Mr. Laymon did apply his brakes in sufficient time to leave 6 feet of tire marks before he entered the intersection; in view of the reaction time of a driver, he must have started to apply his brakes before the marks began to be shown; he pressed his foot strongly on the brake pedal and he necessarily slowed his car as a result. Whether or not this combination of factors was such as to permit an inference that Mr. Laymon reached the entrance to the intersection first is problematical; in any event, we can not say with certainty that the finders of fact were wrong.

4) *Did the cross-complainant exercise due care in making observations as he approached the intersection?*

■ Mr. Laymon looked and he saw; he exercised some care by applying his brakes. In these circumstances, it was the duty and the right of the fact-finder to determine whether he exercised the care that a reasonably prudent person should have exercised in the same circumstances. (*Chadwick* v. *Condit, supra,* 205 Cal.App.2d 313; *Kalfus* v. *Fraze,* 136 Cal. App.2d 415, 430 [288 P.2d 967]; *Startup* v. *Pacific Electric Ry. Co.,* 29 Cal.2d 866, 871 [180 P.2d 896].)

5) *What was the proximate cause of the accident?*

■ The determination of proximate cause is for the finder of fact and that is an additional reason why the jury's finding in favor of respondent should not be interfered with by us. (*Alwood* v. *City of Los Angeles,* 139 Cal.App.2d 49, 53 [293 P.2d 69]; *Simonton* v. *Pierce,* 165 Cal.App.2d 163, 168-169 [331 P.2d 685]; *Smith* v. *Schwartz,* 14 Cal.App.2d 160, 164 [57 P.2d 1386].)

■ The appellants depend primarily on certain cases in which it was held on the specific facts involved that there was no margin for a conclusion by the finders of fact that the record showed anything except negligence as a matter of law. (*Gray* v. *Brinkerhoff,* 41 Cal.2d 180 [258 P.2d 834]; *Novak* v. *Dewar,* 55 Cal.2d 749 [13 Cal.Rptr. 101, 361 P.2d 709]; *Satterlee* v. *Orange Glenn School Dist.,* 29 Cal.2d 581 [177 P.2d

279]; *Huetter* v. *Andrews,* 91 Cal.App.2d 142 [204 P.2d 655]; *Leader* v. *Atkinson,* 49 Cal.App.2d 265 [121 P.2d 759]; and *Prato* v. *Snyder,* 12 Cal.App.2d 88 [55 P.2d 255].) The factual summaries in these opinions, as might be expected, depart markedly from the facts in the present case but the principles of law referred to do not differ from those herein set forth.

We cannot interfere with the jury's verdict as to the facts. (*Anthony* v. *Hobbie, supra,* 25 Cal.2d 814, 818; *Crawford* v. *Southern Pacific Co.,* 3 Cal.2d 427, 429 [45 P.2d 183]; *Chance* v. *Lawry's, Inc.,* 58 Cal.2d 368, 375 [24 Cal.Rptr. 209, 374 P.2d 185]; *Austin* v. *Riverside Portland Cement Co.,* 44 Cal.2d 225, 234 [282 P.2d 69]; *Laird* v. *T. W. Mather, Inc.,* 51 Cal.2d 210, 215-216 [331 P.2d 617]; *Florez* v. *Groom Development Co.,* 53 Cal.2d 347, 357 [1 Cal.Rptr. 840, 348 P.2d 200]; *Kirk* v. *Los Angeles Ry. Corp.,* 26 Cal.2d 833, 838 [161 P.2d 673, 164 A.L.R. 1]; *McLaughlin* v. *City of Los Angeles,* 60 Cal.App.2d 241, 244 [140 P.2d 416]; *Atherly* v. *MacDonald, Young & Nelson, Inc.,* 142 Cal.App.2d 575, 585 [298 P.2d 700].)

The judgment is affirmed.

Brown (R.M.), J., and Stone, J., concurred.