[Civ. No. 342.   Fifth Dist.   July 21, 1964.]

WILLIAM MILTON CROOKS, Plaintiff and Respondent, v. LOIS ALICE PIRRONE et al., Defendants and Appellants.

Cardozo, Trimbur & Nickerson and Robert L. Nickerson for Defendants and Appellants.

Carter, Lacoste & Keller for Plaintiff and Respondent.

CONLEY, P. J.—During the noon hour on March 24, 1962, an automobile accident occurred at the intersection of Jackson and Bacon Roads in Stanislaus County in which plaintiff received severe injuries; a jury trial resulted in a verdict of $15,869.66 in favor of plaintiff against the defendants, Lois Alice Pirrone, the driver of one of the cars, and F. Pirrone Sons, Inc., the owner of the automobile driven by her.

The appellants have not wasted time by contending that the evidence is not sufficient to show negligence on their part, and no question is raised with respect to the propriety of the award of damages insofar as the extent of plaintiff's injuries is concerned. Appellants do, however, claim that the evi-

dence requires a determination that the plaintiff, Willie Milton Crooks, was guilty of contributory negligence as a matter of law. In addition, the appellants base their appeal on the contention that one of their proposed instructions relative to negligence should have been given and that the motor vehicle officer who investigated the collision should have been permitted to give his opinion whether the defendant, Lois Alice Pirrone, was substantially correct in her testimony as to the speed at which she had been driving.

The evidence shows that respondent Crooks was driving in an easterly direction on Bacon Road in his 1955 Dodge and that appellant Lois Alice Pirrone was proceeding south on Jackson Road in a 1960 Oldsmobile. The day was clear and sunny and the vision of the two drivers in approaching the intersection was not interfered with by any intervening houses or trees. Mrs. Pirrone testified that she did not look at her speedometer, that she did not apply her brakes at any time, and that she did not see the Crooks' car until the time of the impact. She thought she was going at about 50 miles an hour, but this testimony conflicts with that of the plaintiff who said that her speed was between 70 and 80 miles an hour. The respondent testified that he had worked for a Mr. Souza in the area for some eight or nine years, had traveled on Bacon Road each working day, customarily returned home for lunch and went back to work at 1 o'clock. There were no obstructions along Jackson Road or Bacon Road in the directions in which the automobiles were being driven for at least one-half mile.

The respondent testified that when he was about 400 feet from the intersection he looked to his left and saw nothing. He then looked at his speedometer and verified the fact that he was going 35 miles an hour; he looked again to his left when he was approximately 30 or 40 feet from the intersection and saw the approaching vehicle driven by Mrs. Pirrone, which at that time was about 125 feet from the intersection and was speeding at between 70 and 80 miles an hour. When it was struck, his car was about three-fourths of the way through the intersection. Appellants' automobile hit respondent's vehicle in the middle; the front of his car was not damaged in any way. The respondent claimed that when he first became aware of the presence of the other automobile, he had no time to do anything to prevent the impact. The record unquestionably showed that there was no traffic control at the intersection. The California Highway Patrol officer testified

that the intersection was unobstructed and that the 65-mile maximum speed limit applied in that area.

We shall take up first the contention of appellants that the court committed reversible error in not permitting Raul Palazuelos, the California Highway Patrol officer who investigated the accident, to state whether he thought from what he saw after the collision that Mrs. Pirrone's estimate of her speed at 50 miles per hour was substantially correct. The officer was originally called to the stand by the plaintiff but was made a witness for the defendants with respect to the question of appellant's speed. As to his qualifications, Mr. Palazuelos testified that he had been on the highway patrol for six years and had made a considerable number of investigations of accidents during that time. He also testified extensively as to the conditions surrounding the locale of the collision after its occurrence. When he was asked how many accidents he had investigated in his lifetime as a highway patrolman, he answered, "should be in the hundreds"; counsel for defendants then asked his opinion whether the statement of the defendant driver as to the speed of her car before the collision was substantially correct. Plaintiff's attorney objected on the ground that the question called for a conclusion of the witness and that no proper foundation had been laid. Further examination disclosed that he had attended the academy for highway patrolmen at Sacramento where instruction is given as to how to investigate accidents; however, in answer to the question whether he had taken the course designed to permit a determination of the relative speed of vehicles based upon skid-marks, the condition of the roadway, the resulting damage to the cars, and other similar features he answered that he had not attended that course.

With a proper foundation laid both as to a known relationship between speed and the objective results of an automobile accident and the knowledge and experience of the witness, there is authority to the effect that a traffic officer may testify as to his estimate of the approximate speed of vehicles which have been involved in a collision; the preliminary duty of counsel who calls such a witness to the stand is to show such relationship, the experience and training of the officer and the facts observed by him after the collision; with all of these elements proven to the satisfaction of the trial judge such a person could in a proper case give his opinion as to speed. (*Davis* v. *Ward,* 219 Cal.App.2d 144, 148-149 [32 Cal.Rptr. 796]; *Enos* v. *Montoya,* 158 Cal.App.2d 394, 399 [322 P.2d

472]; *Warren* v. *Pacific Intermountain Express Co.*, 183 Cal. App.2d 155, 164-165 [6 Cal.Rptr. 824]; Witkin, Cal. Evidence, § 191, p. 212.)

If, after laying a complete and proper foundation, counsel had asked "what, in your opinion, was the approximate speed of the vehicle" such question might well have been permissible.

■ But the responsibility for determining the competency and qualifications of an expert witness rests initially with the trial court. (*Davis* v. *Ward, supra,* 219 Cal.App.2d 144, 148; *People* v. *Haeussler,* 41 Cal.2d 252, 261 [260 P.2d 8]; *Pfingsten* v. *Westenhaver,* 39 Cal.2d 12, 20 [244 P.2d 395]; *Mirich* v. *Balsinger,* 53 Cal.App.2d 103, 114 [127 P.2d 639]; *Sinz* v. *Owens,* 33 Cal.2d 749, 755-756 [205 P.2d 3, 8 A.L.R.2d 757]; *Kritser* v. *Kuttruff,* 197 Cal.App.2d 102, 106 [16 Cal.Rptr. 872]; *Applegate* v. *Wilson,* 156 Cal.App.2d 330, 334 [319 P.2d 401]; 2 Wigmore on Evidence (3d ed.) § 561, p. 641.) And on appeal, the lower court's ruling will not be disturbed unless there has been an abuse of discretion. (*Mirich* v. *Balsinger, supra,* 53 Cal.App.2d 103, 114; *People* v. *Haeussler, supra,* 41 Cal.2d 252, 261; *Huffman* v. *Lindquist,* 37 Cal.2d 465, 476 [234 P.2d 34, 29 A.L.R.2d 485].)

■ The officer admitted that he had never taken the course given by the California Highway Patrol at Sacramento for the ascertainment of speed from the physical results of a collision; there was no showing that he had ever personally conducted experiments along this line or that his conclusions relative to speed in other cases had ever been verified; neither is there anything in the record to indicate that the officer knew sufficient facts concerning the type and weight of the vehicles involved or of principles of mechanics or physics to permit him, as an expert, to arrive at any reasonably accurate opinion as to the speed of the respective vehicles.

The ruling of the trial court that the witness had not qualified to give an answer relative to unobserved speed cannot be upset on the record before us.

Appellants further contend that the trial court was in error in refusing to give their proposed instruction No. 5 reading as follows: "You are instructed that it is not only the duty of a motorist crossing an intersection of public highways to keep such a vigilant lookout for other motorists who are lawfully using the street as is required in the exercise of ordinary care, but it is also his duty to see that which may be seen by the use of ordinary care. It is as negligent to fail to

see that which may be seen by the use of ordinary care as not to look at all."

However, the court did give the following instruction (BAJI 151): "It is the duty of the driver of any vehicle using a public street or highway to exercise ordinary care to avoid placing himself or another person in danger; to use like care to avoid an accident from which injury might result; to be vigilant at all times, keeping a lookout for traffic and other conditions to be reasonably anticipated; and to keep the vehicle under such control that, to avoid a collision with any person or with any other object, he can stop as quickly as might be required by him by eventualities that would be anticipated by an ordinarily prudent driver in like position."

■ Respondent properly points out that the subject matter of the refused instruction was covered by the instruction actually given. Repetitious instructions need not be given. (*Estate of Volen,* 121 Cal.App.2d 161, 166 [262 P.2d 658].) BAJI 151 included the substance of the proposed instruction; this was sufficient. (*Duff* v. *Schaefer Ambulance Service, Inc.,* 132 Cal.App.2d 655, 679 [283 P.2d 91].) Generally speaking, a trial court does not have to give more than one instruction on a given principle of law. (*Ideal Heating Corp.* v. *Royal Indemnity Co.,* 107 Cal.App.2d 662, 668 [237 P.2d 521]; *McNulty* v. *Southern Pacific Co.,* 96 Cal.App.2d 841, 854-856 [216 P.2d 534].)

■ The last argument advanced by appellants is that the record shows contributory negligence as a matter of law. This argument might be persuasive if made to the trier of fact before the verdict, but it is hardly apropos on appeal. Here, as in most similar instances, it was for the jury to decide whether contributory negligence existed. (*Hudson* v. *Rainville,* 46 Cal.2d 474, 478 [297 P.2d 434]; *Genta* v. *Illingworth,* 49 Cal.App. 92, 94 [192 P. 1041].)

■ In 2 Witkin, Summary of California Law, Torts, section 325, page 1522, it is said: "Like negligence . . . contributory negligence is ordinarily a question for the jury, and becomes a question of law only when the court determines that but one inference can reasonably be drawn from the evidence. [Citations.]"

■ In *White* v. *Davis,* 103 Cal.App. 531, 542, 543 [284 P. 1086], it is stated: "Where the injured party fails to look at all, or looks straight ahead without glancing to either side, or is in a position where he cannot see, or in other words, where

he takes no precaution at all for his own safety, it is usually a question for the court. Where he looks but does not see an approaching automobile, or seeing one, erroneously misjudges its speed or distance, or for some other reason assumes he could avoid injury to himself, the question is usually one for the jury.''

Whether or not the plaintiff exercised due care in the circumstances was a question to be determined by the jury. Mr. Crooks did look in the direction from which Mrs. Pirrone was coming; the record showed that he did exercise some degree of care; whether or not he exercised the care of a reasonably prudent person in the circumstances was a question for solution by the jury; we cannot interfere with its factual decision. (*Laymon* v. *Simpson,* 225 Cal.App.2d 50, 57 [36 Cal.Rptr. 859] ; *Chadwick* v. *Condit,* 205 Cal.App.2d 313, 317 [23 Cal.Rptr. 345] ; *Kalfus* v. *Fraze,* 136 Cal.App.2d 415, 430 [288 P.2d 967] ; *Startup* v. *Pacific Electric Ry. Co.,* 29 Cal.2d 866, 871 [180 P.2d 896].)

Also, the finding of the proximate cause of the collision was the duty of the jury. (*Laymon* v. *Simpson, supra,* 225 Cal.App.2d 50, 57; *Alwood* v. *City of Los Angeles,* 139 Cal.App.2d 49, 53 [293 P.2d 69] ; *Simonton* v. *Pierce,* 165 Cal.App.2d 163, 168-169 [331 P.2d 685] ; *Smith* v. *Schwartz,* 14 Cal.App.2d 160, 164 [57 P.2d 1386].)

We are not in a position to interfere with the jury's verdict as to the facts in this case. (*Anthony* v. *Hobbie,* 25 Cal. 2d 814 [155 P.2d 826] ; *Crawford* v. *Southern Pacific Co.,* 3 Cal.2d 427, 429 [45 P.2d 183] ; *Chance* v. *Lawry's Inc.,* 58 Cal.2d 368, 375 [24 Cal.Rptr. 209, 374 P.2d 185] ; *Austin* v. *Riverside Portland Cement Co.,* 44 Cal.2d 225, 234 [282 P.2d 69] ; *Laird* v. *T. W. Mather, Inc.,* 51 Cal.2d 210, 215-216 [331 P.2d 617] ; *Florez* v. *Groom Development Co.,* 53 Cal.2d 347, 357 [1 Cal.Rptr. 840, 348 P.2d 200] ; *Kirk* v. *Los Angeles Ry. Corp.,* 26 Cal.2d 833, 838 [161 P.2d 673, 164 A.L.R. 1] ; *McLaughlin* v. *City of Los Angeles,* 60 Cal.App.2d 241, 244 [140 P.2d 416] ; *Atherley* v. *MacDonald, Young & Nelson,* 142 Cal.App.2d 575, 585 [298 P.2d 700].)

The judgment is affirmed.

Brown (R. M.), J., concurred.