[Civ. No. 504.   Fifth Dist.   Jan. 19, 1966.]

J. C. WEBB et al., Plaintiffs and Appellants, v. GARRETT R. VAN NOORT et al., Defendants and Respondents.

Philander Brooks Beadle, John T. Tully and Barreiro & Dilling for Plaintiffs and Appellants.

McCormick, Barstow, Sheppard, Coyle & Best and William B. Boone for Defendants and Respondents.

BROWN (R.M.), J.—Plaintiffs appeal from a judgment for the defendants entered pursuant to a unanimous verdict of a jury in an action for the wrongful death of the plaintiffs' daughter, Loretta Webb, age 17, resulting from a non-impact automobile accident. Their motion for a new trial, based primarily on insufficiency of the evidence, was denied. The defendants are Garrett Van Noort, the driver, and his mother, Jean Van Noort, the owner of the adverse vehicle. Garrett will be referred to hereinafter as the defendant.

The plaintiffs contend that the evidence does not support the verdict and that the trial court erred in excluding and in receiving certain evidence.

The accident occurred on March 24, 1963, at about 12:10 p.m. in clear, sunny weather on Lacey Boulevard which, at that point, is a paved east-west, two-lane highway in Kings County and is intersected at right angles by Twelfth Avenue. Vehicular traffic on Lacey is protected by arterial stop signs posted on Twelfth. The prima facie speed limit on Lacey is 55 miles per hour.

Both vehicles were traveling west on Lacey Boulevard. Traffic was light and there was not another car on Lacey within a mile of the automobiles here involved at the time of the occurrence. Prior to the accident the defendant was driving his mother's car west on Lacey Boulevard at a speed of approximately 40 to 45 miles per hour, intending to make a left turn onto Twelfth to proceed to the home of his mother. He was familiar with the intersection; his usual route from the City of Hanford to the home of his mother was westerly on Lacey to Twelfth, with a left turn onto Twelfth. When he was about one-half mile east of the intersection he noticed the Webb automobile, which he subsequently learned was then being driven by Loretta, farther than one-half block to the rear. As he approached the intersection he braked to slow the car, looked at a side rear-view mirror affixed outside the left front of the automobile which reflected the street behind him but did not reflect conditions to his left, and commenced a left turning motion. The Webb vehicle was not then behind him. He gave a mechanical left turn signal but did not give an arm signal. When the front end of the Van Noort automobile was at or slightly past the center line of Lacey, at a point about the middle of Twelfth Avenue, he again saw the Webb car. It was then traveling rapidly, entirely in the eastbound lane, in an approximate parallel position; its front wheels were about even with the left front door of the Van Noort automobile; and it was approximately 2 feet away. At this time the speed of the Van Noort car was 10 or 15 miles per hour. Then the defendant started to turn right, but the Webb vehicle was traveling so much faster than the Van Noort automobile that it passed before he could do so. There was no impact.

By means of skidmarks the path of the Webb vehicle was traced. The skidmarks commenced at about the center of the intersection and extended westerly in an arc, curving off into

the improved shoulder of the eastbound lane, then into the dirt at the side of the boulevard, then back onto the paved shoulder, a total distance of 231 feet. The first 135 feet of the marks were curving, becoming broader until the point where they came back on the pavement; then for some 96 feet they consisted of ''side brush marks'' indicating that the tires were sideways. For 51 feet after the automobile returned to the paved portion of the avenue, there were gouge marks on the roadway, indicating that metal struck the pavement. The Webb car rolled over one and one-half times, and came to rest on Lacey Boulevard. The decedent driver sustained injuries resulting in her death. An occupant of the Webb car, Dennis DeForrest, who did not testify at the trial because he was in the armed services of the United States, stationed in Alaska, was injured.

Shortly after the accident, Ronald Strole, an investigating officer, tested the lights and turn signals on the Van Noort automobile and found that the rear left stop light and rear left turn-signal light were not functioning. Two bulbs in the left rear had burned out. Both of the defendants testified that they did not know that the bulbs had burned out. Officer Strole testified that when he found the left rear turn signal was not functioning, ''He [the defendant] was amazed that it wasn't.'' All other lights were functioning properly.

The plaintiffs' contention that the evidence does not sufficiently support the judgment cannot be upheld. When such a contention is made the rules governing review are stated in *Berniker* v. *Berniker,* 30 Cal.2d 439, at page 444 [182 P.2d 557], thusly: ''As has so frequently been said, it is the general rule that on appeal an appellate court (1) will view the evidence in the light most favorable to the respondent; (2) will not weigh the evidence; (3) will indulge all intendments and reasonable inferences which favor sustaining the finding of the trier of fact; and (4) will not disturb the finding of the trier of fact if there is substantial evidence in the record in support thereof. [Citations.] It is not the province of the reviewing court to analyze conflicts in the evidence. [Citation.] Rather, when a finding of fact is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence contradicted or uncontradicted, which will uphold the disputed finding.''

The plaintiffs' point rests upon the proposition that the defendant was negligent as a matter of law in failing to

maintain a reasonable lookout for other vehicles traveling on
the highway and in failing to give a proper left-turn signal
in violation of section 22107 of the Vehicle Code.     Gen-
erally in an action arising from a two-car accident, the ques-
tions of negligence, contributive negligence and proximate
cause are purely questions of fact for the jury. (*Laymon* v.
*Simpson,* 225 Cal.App.2d 50, 54, 57 [36 Cal.Rptr. 859];
*Garcia* v. *Hoffman,* 212 Cal.App.2d 530, 542 [28 Cal.Rptr.
98]; *Chadwick* v. *Condit,* 205 Cal.App.2d 313, 317-318 [23
Cal.Rptr. 245]); and this is so where one driver turns left at
an intersection and the other driver is attempting to pass.
(*Wilson* v. *Gurney,* 123 Cal.App.2d 889, 893 [268 P.2d 77];
*Wright* v. *Sniffin,* 80 Cal.App.2d 358, 362-363 [181 P.2d
675]; *Dieckmann* v. *Signorini,* 47 Cal.App.2d 481, 484-486
[118 P.2d 319]; *Miller* v. *Pacific Freight Lines,* 40 Cal.App.
2d 451, 455 [104 P.2d 1069].) As this court said in *Laymon*
v. *Simpson, supra,* 225 Cal.App.2d 50, at page 52: ". . . it is
a rare thing that appellants ask us to do, namely, to overrule
the factual finding of a jury, approved by the trial judge on
motion for a new trial, . . ."

    From the evidence in this case the jury could have
found that the defendant was free from negligence in that he
did not know that the bulbs had burned out in the rear left-
turn signal and that the presumption of negligence arising
from his inadvertent violation of section 22107 of the Vehicle
Code, which requires a motorist to give a signal prior to
making a turn, was rebutted by the evidence when tested by
the rule laid out in *Alarid* v. *Vanier,* 50 Cal.2d 617 [327 P.2d
897]. In the cited case, at page 624, it was said: "In our
opinion the correct test is whether the person who has vio-
lated a statute has sustained the burden of showing that he
did what might reasonably be expected of a person of ordi-
nary prudence, acting under similar circumstances, who
desired to comply with the law."

No charge is made that the defendant slowed abruptly or
that he made a sudden turning motion. Several cases relied
upon by the plaintiffs holding that under the factual situ-
ations there involved negligence was shown as a matter of
law, are readily distinguishable. In *Huetter* v. *Andrews,* 91
Cal.App.2d 142 [204 P.2d 655], the defendant, with 850 feet
of clear highway ahead, and looking straight ahead, drove his
car at a speed of 35 to 40 miles per hour, striking broadside
the car in which the plaintiff was riding, which car was
clearly visible. *Gray* v. *Brinkerhoff,* 41 Cal.2d 180 [258 P.2d

834], and *Novak* v. *Dewar*, 55 Cal.2d 749 [13 Cal.Rptr. 101, 361 P.2d 709], both dealt with situations where the automobiles driven by the respective defendants struck the plaintiffs, who were pedestrians in crosswalks. In *Puckhaber* v. *Southern Pac. Co.*, 132 Cal. 363 [64 P. 480], there is no evidence of any kind as to the proximate cause of the death.

The jury could also have found that the decedent driver was contributively negligent since the evidence supported an inference that Loretta was overtaking and passing the Van Noort automobile at an intersection in violation of the provisions of Vehicle Code section 21752, subdivision (c), which prohibits passing within 100 feet of an intersection, and that she was traveling at a high rate of speed. The fact that she obviously lost control of the automobile, the 231 feet of skidmarks, the gouges made and left in the pavement by the Webb car, and the fact that it turned over one and one-half times before coming to rest, signify high speed.

The jury was not required to draw from the evidence the same inferences which the plaintiffs draw. "It is an elementary rule that, where opposing factual inferences may reasonably be drawn from the evidence, the inference drawn by the jury may not be disturbed by an appellate tribunal." (*Larson* v. *Solbakken*, 221 Cal.App.2d 410, 416 [34 Cal.Rptr. 450].)

We conclude that the evidence is sufficient to support the verdict since the jury could have found either that the defendant was free from negligence or that the decedent was contributively negligent, which was the proximate cause of the accident.

The plaintiffs next contend that the trial court erred in excluding evidence concerning the driving habits of the decedent driver. The plaintiff Hazel Webb testified that she had ridden with Loretta when the latter was driving an automobile; and that Loretta had passed a driving course conducted at her school. The following then transpired: "Q. [Plaintiffs' counsel] : As far as you could observe when you rode with her, how did she drive?"

An objection to the question was sustained and plaintiffs' counsel passed to other subjects of testimony without further comment.

Evidence of habit to prove conduct on a specific occasion in conformity with the habit, if there are no eyewit-

nesses, has long been held admissible in California. (*Wallis* v. *Southern Pac. Co.*, 184 Cal. 662 [195 P. 408, 15 A.L.R. 117], habit of stopping and listening at railroad crossings; *Boone* v. *Bank of America*, 220 Cal. 93 [29 P.2d 409], habit of operating a motorcycle at excessive speeds on the same highway upon which the accident occurred, in same vicinity and immediately preceding the accident; *Shearer* v. *Pacific Gas & Elec. Co.*, 43 Cal.App.2d 306 [111 P.2d 690], custom of examining truck at closing time before it was taken home.)

■ But where habit evidence is sought to be introduced on the issue of negligence the cases uniformly hold that to be admissible the evidence must be limited to conduct which constitutes a habit, that is, a ''person's regular practice of meeting a particular kind of situation with a specific type of conduct . . . thus indicating that the doing of the act is semi-automatic'' (see McCormick on Evidence, pp. 340-341, as quoted in 1 Jones on Evidence, § 191, p. 332); and that it must not be too remote in time or space from the time and place of the specified occurrence. (*Boone* v. *Bank of America, supra,* 220 Cal. 93, 95; *Lindsey* v. *Pacific Electric Ry. Co.*, 111 Cal.App. 482, 499 [296 P. 131].) ■ On the other hand, it has consistently been held that evidence of a general character trait for care or skill is inadmissible to prove conduct on a specified occasion.[1] Cases dealing with the inadmissibility of evidence of a general character trait for care or skill, or lack thereof, are distinguished in *Wallis* v. *Southern Pac. Co., supra,* 184 Cal. 662, where it is said at page 666: ''This class of evidence is clearly distinguishable from that establishing a custom or habit of doing some particular thing in a particular way.''

In *Carr* v. *Stern*, 17 Cal.App. 397, 406-407 [120 P. 35], proposed evidence of the skill and efficiency of a driver as a chauffeur and of the care with which he ordinarily drives and has driven was held to be immaterial. It follows that it was therefore inadmissible. Mr. Witkin, in his work on California Evidence, section 133, at page 157, characterizes testimony offered (and excluded for other reasons) in *Linde* v. *Emmick*, 16 Cal.App.2d 676, 685 [61 P.2d 338], that the plaintiff was ''a careful, cautious driver'' as being ''really character'' evidence and thus excludable.

---

[1] The rules governing admissibility of habit evidence and inadmissibility of character evidence, which evolved in the decisional law, have been codified as sections 1104 and 1105 in the new Evidence Code of California, which will be effective January 1, 1967.

In this case the single question asked the witness was general in nature and called for a general answer. In response to the question as it was phrased, the witness could only have answered that Loretta drove carefully, or that she drove negligently, or that she drove in an average manner. Such an answer would run to a general character trait for driving, and not to the decedent's *habit* of doing a particular thing in a particular way. Counsel did not see fit to rephrase his question so as to elicit habit evidence, as distinguished from evidence of a general character trait, nor did he advise the court that he wished so to do, nor did he make an offer of proof. The single general question having been asked, the single objection having been sustained, counsel passed to other matters. Thus, no habit evidence was asked for or offered and no ruling was made thereon. The complaint which now is being made on appeal appears to be a mere afterthought. We would say there was no error in the court's ruling in this respect.

Plaintiffs lastly complain that defendant Jean Van Noort was permitted to testify, over objection, that she was the mother of eight children. They also complain, although no objection was made at the trial, that she was permitted to testify that her husband had died ''a little over three years ago.'' It is argued that these facts had no tendency to prove any material issue and were injected into the trial for the sole purpose of eliciting the sympathies of the jurors in behalf of the defendants. The objection that the witness testified that her husband was deceased comes too late on appeal, no objection or motion to strike having been made thereto at the trial. A bare statement that Mrs. Van Noort was the mother of eight children does not bring this case within the purview of those cases on which plaintiffs rely where evidence of the poverty of the heirs in wrongful death actions was held to have been erroneously received. (*Ensign* v. *Southern Pac. Co.*, 193 Cal. 311, 321-322 [223 P. 953]; *Green* v. *Southern Pac. Co.*, 122 Cal. 563, 564-565 [55 P. 577]; *Mahoney* v. *San Francisco etc. Ry. Co.*, 110 Cal. 471, 475-476 [42 P. 968, 43 P. 518].) It is, of course, the general rule that in a wrongful death action evidence of the heirs' wealth or poverty is inadmissible. (*Stathos* v. *Lemich*, 213 Cal.App.2d 52, 55-56 [28 Cal.Rptr. 462].) Assuming that the same rule obtains as to defendants in such actions, no case has been cited and none has been found which holds that an

inference of either wealth or poverty of a litigant can be drawn from a statement of the number of children who were born to the litigant. Even if it be assumed that the question and the answer were improper as being outside of the issues, no prejudice to the plaintiffs has been shown and the record discloses none.

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.